OPINION OF THE COURT
Fuchsberg, J.
After a jury trial, defendant Leonel Castillo was convicted on charges that grew out of two separate criminal incidents two days apart. The counts relating to the earlier criminal episode — first degree robbery, first degree burglary and first degree sexual abuse — were dismissed by the Appellate Division on the facts and in the interest of justice. The case was then remanded for sentencing on the surviving count, one for attempted burglary that resulted from his participation in the later incident. Castillo now contends that there was no proof of his intention to commit attempted burglary and that that charge must now be dismissed or, alternatively, that in any event the jury’s consideration of his guilt or innocence on that count was so infected (1) by the evidence and charge relating to the now dismissed counts, and (2) by evidence that he was walking around in the vicinity of the crimes on a day subsequent to his arrest that a new trial is required. For the reasons that follow, we agree that retrial and not dismissal is warranted.
The first incident occurred at approximately 4:00 a.m. on August 27, 1975 at the third floor apartment of a Bronx family when their adult daughter was awakened by a male intruder. The man threatened her, took a sum of money, *274 kissed her face, fondled parts of her body and then fled when she screamed. Because the room was unlit, she could describe her assailant to the police only as a Black teenage male and provided no further identifying characteristics. In particular, though the intruder spoke during the incident, she noticed nothing distinctive about his speech.
On August 29, again in the early morning hours, the victim’s father and brother awoke to discover a man walking along a window ledge outside the apartment. According to the father, the man was trying to pull open the bathroom window. The police were summoned but the intruder was gone when they arrived. However, they found defendant, who answered the general description of the perpetrator furnished to them, walking on the street a short distance from the building. He was then taken to the premises, where he was identified by the father and son as the man they had seen on the ledge. The daughter, viewing Castillo through a peephole in the door, at that time also identified him as the man who had assaulted her two nights previously.
Defendant, a Guatemalan native who speaks halting and heavily accented English, was at the time of these crimes 28 years of age. At his trial, after producing several character witnesses, he took the stand in his own defense and denied any involvement in either crime. His version of the events of August 29 was simply that he had been walking on his way to the butcher shop where he was employed when the police came upon him. According to Castillo, his job commenced at 5:00 a.m. and the street on which the apartment house, where the crimes occurred, is located was roughly half way between his home and his place of employment. As to the August 27 incident, Castillo asserted that he had taken a bus to work that morning and did not leave his home until 4:15 a.m.
In reversing the counts pertaining to the August 27 episode, the Appellate Division found that "under all the circumstances, there exists a substantial possibility of misidentification leading inevitably to the creation of a reasonable doubt” (62 AD2d 938, 939).[1] In remanding for resentencing on the remaining count, the court did so to afford the Trial Judge the opportunity to cure the taint that the dismissed counts might have worked on his exercise of sentencing discretion; it other *275 wise allowed the conviction on that count to stand. We hold that this limited remedy was insufficient. As it turned out, the joinder of the August 29 count with the counts that must now be viewed as based entirely upon a misidentification worked ineradicable prejudice on Castillo’s right to a fair trial on the charge of attempted burglary.
That prejudice was preordained by the very tenor of defendant’s trial, the product of an assiduous effort by the prosecutor to orchestrate the evidence relevant to both incidents into a single theme: that Castillo was engaged in a pattern of criminal activity. Doubtless the Assistant District Attorney’s strenuous opposition to the defendant’s prompt motion for severance was motivated in part by a desire to use to full advantage the undeniable similarities as to time and place in the two criminal episodes, a motivation at least conceptually proper before the weakness of the identification testimony revealed itself (see People v Molineux, 168 NY 264, 305-306). Thus, the trial strategy blurred the separate features of each incident to a point where it cannot be said that the proofs relating to one episode did not supplement deficiencies in the proof on key elements of the other.
Specifically, the earlier incident tended not merely to bolster the witnesses’ identification of Castillo as the man on the ledge and to undermine Castillo’s defense, but, further, provided the prosecution with a compelling argument as to the defendant’s intent on August 29. In fact, the Trial Judge instructed the jury that "On the question of the intent to commit a crime in the dwelling * * * you may infer such intent from the manner of attempted entry and considering the time of night or if you ñnd that this defendant was, in fact, the perpetrator of the acts alleged to have occurred on August 27th * * * then you may infer from such prior acts on these premises an intent to commit the same or similar crimes on August 29th.” (Italics supplied.) Defendant’s counsel took exception and the court twice reformulated the latter half of its instruction, but it only served to emphasize to the jury that the inference could be drawn from defendant’s participation in the earlier incident: "if as I say you find he was the person on both occasions * * * you may infer from the acts on August 27th an intent on August 29th to repeat the same or similar criminal action or conduct.” Despite the phrasing of the intent charge in the alternative, the option to determine that intent from the subsequently dismissed counts *276 could easily have overborne the jury’s consideration of the circumstances of the attempted entry.
In comparison to the bare circumstance of Castillo’s having been seen on the window ledge tugging at the window, the impact of the August 27 proof was utterly damning. Most obvious was its almost irresistible tendency to connect the defendant with a prior course of criminality, curious in its similarity. This evidence, since found to be admissible against Castillo on the dismissed counts only, was calculated to play upon the jury’s natural inclination to view a defendant who has been accused of committing such crimes in the past as either the kind of person likely to have commited the crime charged or as deserving of punishment in any event (see People v Jackson, 39 NY2d 64, 67-68; People v Molineux, 168 NY 264, 293, supra; cf. People v Davis, 44 NY2d 269, 274). Aggravating the prejudice was the inflammatory nature of that prior crime. Further, and most devastating when combined with the Judge’s charge on intent, was the fact that the prior crime placed Castillo inside the apartment.
All this tended to deny the defendant his right to have the jury fairly evaluate only the evidence admissible against him on the attempted burglary count. Left to infer the defendant’s intent to commit a crime within the apartment from the proof relating to that uncompleted event alone, the jury could have found he had engaged only in trespassing or voyeurism or, since only one witness testified that he "pulled on the window” and it is conceded that he never gained access to the apartment, even the lesser included offense of attempted trespass (see People v Henderson, 41 NY2d 233, 236-237). These outcomes were precluded by the Appellate Division’s restriction of its remand to the matter of the sentence.
We now address, though only briefly because of the magnitude of the prejudice which flowed from the point we have already considered, defendant’s assignment of additional error in the prosecutor’s use of testimony that Castillo was observed three days after his arrest "wandering around” at about 4:00 a.m. in the neighborhood where the prior incidents occurred. This proof was employed in summation to strengthen the District Attorney’s contention that Castillo was engaged in a consistent course of criminality. It is apparent that there was nothing so unique in this conduct as to make it probative in some relevant respect of his participation in the criminal acts committed at an earlier time (see People v Spillman, 309 NY *277 295, 302-303; People v Rosenthal, 289 NY 482, 488). Moreover, the proof of Castillo’s conduct on this occasion did not support the prosecutor’s argument that he might be guilty of other crimes, a suggestion to which even the Trial Judge fell prey;[2] the introduction of this evidence also was error (cf. People v Daforno, 48 AD2d 801, 802; People v Gonzalez, 24 AD2d 989; People v Penner, 283 App Div 731).
While, on the foregoing analysis, we agree that the defendant is entitled to a new trial as to the August 29 charge, we reject his contention that we go further and dismiss on the ground that there was no proof sufficient to establish his intent to commit a crime inside the building.
Of course, since there was no proof of an open expression of intent by the perpetrator of this act, it had to be established by circumstantial evidence. So, in deciding whether the People met their burden, we are required to say whether, considering the facts proved and the inferences that could reasonably be drawn therefrom, a jury could conclude that there was no reasonable doubt that the defendant, if found to be the culprit, intended to burglarize the apartment (see People v Bracey, 41 NY2d 296; La Fave & Scott, Criminal Law, § 59, p 429, n 80). Although credibility is thus for the trier of facts and, in judging whether a prima facie case has been made out, the questions of fact must be assumed to have been decided for the People (People v Benzinger, 36 NY2d 29), the foundation for the findings must be facts and inferences that are so reasonable that they cannot be confused with mere conjecture or suspicion.
That does not mean, however, there may not be more than one inference that it is possible for the jury to adopt. A choice between competing inferences, as a choice between competing facts, is available to the trier of facts so long as the one arrived at is found beyond a reasonable doubt. And, because intent is almost always a matter of indirect proof where the *278 crime is an inchoate one, unless the ability to prove intent is almost universally to be frustrated, a realistic view sensitive to the gradation of offenses incorporated into the law (see Hall, Criminal Attempt — A Study of the Foundations of Criminal Liability, 49 Yale LJ 789, 840) recognizes that findings derived from hard evidence of overt behavior carried forward within a dangerous proximity to the criminal end to be attained are sustainable (People v Bracey, supra, p 300; People v Werblow, 241 NY 55; Wechsler, Jones and Korn, The Treatment of Inchoate Crimes in the Model Penal Code, 61 Col L Rev 571-628).
These principles in mind, there was enough here to make out a case on intent. The presence of the perpetrator, like a cliff-climber, on the third-story ledge of a city apartment complex in the dead of night could hardly lead to any other inference but that a crime was in the offing. The attempt to pull up the apartment window was not intended to provide ventilation for the occupants. Nor was there any proof that Castillo had any prior relation with the occupants that might explain his behavior. Allowing for the fact that the tenants could be expected to be asleep at this predawn hour and that the entrance was to be effected through a bathroom, where no one was then likely to be present, the proof permitted a conclusion that the intruder’s means of access fit a familiar pattern common to burglaries (see People v Bracey, supra, p 302).
For all these reasons, the order of the Appellate Division, insofar as appealed from, should be reversed and a new trial ordered on the fourth count of the indictment.
Chief Judge Cooke, and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order, insofar as appealed from, reversed, etc.

. The People could take no appeal from the Appellate Division’s order of dismissal (see CPL 450.90, subd 2, par [a]; cf. People v Mackell, 40 NY2d 59).

. At sentencing, the Judge remarked: "The Court in imposing sentence notes not only did the defendant commit the crime of burglary in the first degree, robbery in the first and sexual abuse in the first degree, but two days later returned and attempted to return to the same apartment and was convicted of attempted burglary in the second degree. Two days later, he was found probing around the same area at 4:00 o’clock in the morning and gave the officer who he saw him — who was the original arresting officer who followed him in the circle, I believe extending three quarters of the way around — the unlikely story that he was taking a short-cut on his way to work, although going in circles. I think that this is merely * * * the first time the defendant was caught.” (Italics supplied.)