■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD McKNIGHT, Appellant.—Judgment affirmed. Memorandum: Because of insufficient evidence of identity of the perpetrators of a murder and attempt to murder committed on May 10, 1972, the convictions of defendant Edward McKnight and one Freeland were reversed by the Court of Appeals and a new trial was granted *(People v Freeland,* 36 NY2d 518). The primary basis of the reversal was the existence of evidence that the surviving victim-witness may have been under the influence of drugs and that her identifications, in particular of Freeland, were subject to reasonable doubt. Before retrial was begun, the victim-witness exonerated Freeland, and one Byrant, who looked somewhat like Freeland, was indicted as defendant's partner. He was later acquitted thereof. After midnight on May 10, 1972, Ms. Stephonsa Washington and Ms. Orvetta Stewart were standing on a street corner waiting for a pickup, and defendant and another man allegedly came along in an automobile and picked them up, apparently for purposes of prostitution. Orvetta got in the front seat with defendant, and Ms. Washington got in the rear with the other man. These men then stated their intention to kill the girls. Ms. Washington was killed by strangulation. Orvetta testified that she did not have a good opportunity to observe the man in the rear seat but that she did clearly observe defendant in the front seat, that he

tried to strangle her, and he left her as dead. At all times thereafter she steadfastly affirmed that defendant was the one who assaulted her and that she has no doubt about it. In addition to Orvetta's identification of defendant as her assailant there was evidence that defendant told one Croom, in prison, that on the occasion in question defendant had taken Freeland along just for the ride (defendant thus admitting his involvement); that when told that another person admitted participating with defendant in killing Ms. Washington, defendant said, "those people talk too much"; that defendant told his wife of his involvement in the crime and, because he was having difficulty with her, he was afraid that she would tell the District Attorney, and he asked Croom to kill her; and that defendant also sought to engage Croom to kill Orvetta Stewart, the only eyewitness against him in this case. The court did not abuse its discretion in receiving Croom's testimony as evidence of defendant's consciousness of guilt, especially when it was supported by substantial direct evidence from Orvetta Stewart of defendant's guilt *(People v Buchalter,* 289 NY 181, 218, affd 319 US 427; *People v Yazum,* 13 NY2d 302, 304-305; *People v Howell,* 3 AD2d 153, 158, affd 3 NY2d 672; *People v Jenkins,* 61 AD2d 705, 711). The court erred, however, in permitting Orvetta to testify that pending the trial someone fired a shot at her through her apartment window, for there was no evidence that the person who fired the shot was in any way an agent of or connected with defendant. Nevertheless, despite that error, we decline to reverse. Few trials are without some error *(People v Kingston,* 8 NY2d 384, 387); and in our view the extensive and careful charge to the jury by the trial court as to the limited value and use of evidence showing consciousness of guilt and that it may not be used to show that defendant had general criminal propensities, makes it clear that there is no significant probability that except for the error the jury would have acquitted defendant; and hence the error was harmless *(People v Crimmins,* 36 NY2d 230, 241-242; cf. *People v Dickman,* 42 NY2d 294, 298). The newly discovered evidence which defendant offered as ground for setting aside the verdict and for a new trial was merely cumulative of that presented at the second trial, and it only tended to impeach and discredit the People's principal witness, Orvetta Stewart. Her credibility was the principal object of the second trial, and it was extensively explored. In denying the motion the court acted within its discretionary power (see *People v Slaughter,* 37 NY2d 596, 600-601; *People v Becker,* 215 NY 126, 159-160; *People v Williams,* 35 AD2d 1023; *People v Galler* 266 App Div 675). We have considered the other claims of error and find them to be without merit. All concur, except Cardamone, J. P. and Hancock, Jr., J., who dissent and vote to reverse the judgment and grant a new trial in the following memorandum.

Cardamone, J. P., and Hancock, Jr., J. (dissenting). We are compelled to dissent. The defendant has been convicted of murder and attempted murder. During the trial, evidence of an attempted murder of the only eyewitness was received over objection. The majority agree that the testimony should not have been admitted because "there was [no] evidence that the person who fired the shot was in any way an agent of or connected with the defendant." In its final charge the court compounded the error by specifically instructing the jury that they could find the defendant to have been responsible for the shooting, stating; "before you can consider the shot fired through the window, you must also be convinced beyond a reasonable doubt that this defendant was connected with the firing of the shot. If you're not so convinced, then you cannot consider it—the testimony." Thus in a trial for murder and attempted murder, the jury was invited to speculate that

the defendant had tried to kill the complaining witness although there was no legal evidence of the fact. We cannot accept the conclusion that this could have been harmless error under *People v Crimmins* (36 NY2d 230). (See *People v Castillo,* 47 NY2d 270; *People v Dickman,* 42 NY2d 294; cf. *People v Cook,* 42 NY2d 204.) In *Crimmins* the Court of Appeals laid down a two-step test for the consideration of nonconstitutional errors during a trial. The first step is to determine whether proof of defendant's guilt, without reference to the error, is overwhelming. Having satisfied itself that the first step is successfully met, an appellate court may then consider whether "there is a significant probability * * * that the jury would have acquitted the defendant had it not been for the error or errors which occurred," *(People v Crimmins, supra,* pp 241-242). The majority have misapplied the first step of this rule, because the evidence of defendant's guilt in this case, is not overwhelming. In this trial for the murder of one person and the attempted murder of another, the key issue was the identification of the defendant. The only witness was the surviving victim, Orvetta Stewart. She first testified that this defendant and a codefendant were the two men who had murdered her friend and attempted to murder her. This incident occurred late at night on a downtown street in Buffalo. In 1973 this defendant and codefendant were convicted after a jury trial. The conviction was reversed by the Court of Appeals and a new trial ordered because of the uncertainty surrounding this witness' identification of the defendants. After the reversal the case against the defendant was discontinued because the witness recanted her identification of him. Thus, it is clear that this witness' credibility was the crucial issue. Bearing on her credibility is the fact that she positively identified the codefendant on five separate occasions as being one of the perpetrators of the crime. She similarly identified this defendant as one of the two men present. At the time of the crime she was a prostitute. She testified at the trial in 1977 that she was not then a prostitute and claimed that she had not engaged in prostitution for a period of at least one year preceding the trial. Upon cross-examination defense counsel attempted to establish that within approximately one month of trial she had been arrested for loitering for purposes of prostitution. A reading of the record makes abundantly clear that this prostitution charge against her was dropped in the interest of justice after she testified in this defendant's trial. She also testified that on the night in question, May 10, 1972, she was not a heroin addict or user. The People's own medical witness and the hospital records, however, conclusively show that at the time of her admission on the date of this crime she had "track marks" on both of her arms and was diagnosed on admission as a "heroin addict". The nurses' notes reveal that while confined in the hospital she constantly complained of pain so as to obtain morphine. In the record there is no other direct evidence of defendant's guilt. The People questioned Orvetta Stewart in connection with an incident which allegedly occurred on October 8. 1976. She claims that on that date two unidentified men (neither of whom were defendant) came to her house and that shortly thereafter several shots were fired at her. Upon objection to this unrelated, remote incident the District Attorney stated that he would connect the alleged attempt on Ms. Stewart's life to the defendant. The testimony thereafter offered was given by one Croom, who was in prison with this defendant. Witness Croom testified that the defendant had first told him that he was having marital troubles with his wife and wanted Croom to "get rid of" his wife. Croom refused. One month later, Croom's testimony continued, defendant asked him to get rid of the only witness (not naming her) that could identify him in the murder case. In return for this

testimony Croom was promised assistance with a pending parole violation and a weapons charge. The prejudicial impact of the inadmissible evidence concerning the shooting is substantially magnified, in our opinion, when it is superimposed on the testimony by Croom that the defendant had tried to hire him to kill Orvetta Stewart. Without the irrelevant and prejudicial proof of the shooting, the jury could well have discounted Croom's testimony as that of a convicted felon and parole violator who would be eager to provide helpful testimony hoping to obtain favorable parole treatment from the People. With the proof of the shooting, the jury could have concluded (based solely on the irrelevant and inadmissible evidence) that Croom's testimony had been "corroborated" and that not only had the defendant tried to hire Croom to kill Stewart, but that the defendant had, in fact, gotten someone else to do the job. We cannot say, therefore, that there is not a significant probability that defendant's convictions resulted not from the proof relating to the indictment but rather from the jury's unwarranted conclusion that defendant was guilty of an uncharged and unrelated attempted murder and that he therefore must have committed the crimes charged. To permit the jury as the trial court did in its charge to infer from this testimony evidence of the defendant's consciousness of guilt is to allow the jury to leap a logical gap in the proof before them and to draw an unwarranted conclusion based on pure conjecture. Because the improper proof of the commission of another crime has "worked ineradicable prejudice on [defendant's] right to a fair trial on the charge[s] of [murder and attempted murder]" *(People v Castillo,* 47 NY2d 270), we would reverse and grant a new trial. (See, also, *People v Vails,* 43 NY2d 364, 368; *People v Cook,* 42 NY2d 204, 208, *supra; People v Sandoval,* 34 NY2d 371, 377; *People v Schwartzman,* 24 NY2d 241, 247, cert den 396 US 846; *People v McKinney,* 24 NY2d 180, 184-186.) (Appeal from judgment of Erie County Court—murder and attempted murder.) Present—Cardamone, J. P., Simons, Hancock, Jr., Callahan and Witmer, JJ.