OPINION OF THE COURT
Fuchsberg, J.
Appellants Harry Turrell and Joseph Pena stand convicted, after a trial by jury, of robbery in the first degree and criminal possession of stolen property in the third degree, both arising out of the robbery of 16-year-old Anthony Irons.
Their convictions having been affirmed by the Appellate Division, each defendant now raises the claim that the proof was insufficient to convict him of first degree robbery, which, under the theory charged in the indictment, involves the use or threatened immediate use of a dangerous instrument (Penal Law, § 160.15, subd 3). Despite Turrell’s express *406 threats to shoot the victim, no weapon was observed during the course of the robbery; in view of these circumstances, appellants maintain that it could not be found that a knife later seized from Pena played any role in the crime. In addition, both defendants assign as error the trial court’s refusal to allow cross-examination of the arresting officer on the subject of the complainant’s confidential youthful offender adjudication. They further complain of errors in the charge, particularly on the availability of trial testimony .to aid the jury in its deliberations. Finally, Pena alone contends that he was penalized for exercising his right to a trial when the trial court imposed a more severe sentence than he had been promised in the context of an unconsummated plea bargain. For the reasons that follow, we find each of appellants’ arguments unpersuasive.
The facts are uncomplicated. After an initial brief encounter during which Turrell and Pena apparently sought to determine whether Irons had any drugs, the two men followed him into a nearby park, and, upon approaching the bench where he was seated, Turrell asked him for money. Irons surrendered what little he possessed, whereupon Turrell thrust his arm, with its hand enclosed in a brown paper bag, towards Irons, who later was to testify it "looked like there was a gun in it”, and threatened, "See, if you run, I’ll shoot you”. Pena, meanwhile, instructed Irons to remove his coat, telling the boy that it would be returned if he were to hand over $10 to Turrell. Before the two departed, Turrell added that if Irons called the police he would be killed.
Irons nevertheless promptly summoned the police and, when they arrived, joined them in the search for the robbers. After driving around for a short time, Irons sighted both Turrell and Pena standing on a street corner three blocks from the park in which he had been accosted. Pena was wearing the complainant’s coat and holding in his hand a brown paper bag of the type employed in the robbery and which, upon his arrest, was found to contain a knife. At the trial, in which the People’s case was developed through Irons and the arresting officer, both the paper bag and the knife were introduced as evidence.
These facts before us, we treat first with the alleged insufficiency of proof. Doing so, we observe that, in the circumstances of this case, the issue narrows down to whether the People met their burden of proving that Turrell possessed and *407 employed a "dangerous instrument” when he and Pena divested young Irons of the currency and the coat. Because Irons testified that he did not actually observe the weapon within the paper bag with which Turrell menaced him at the time of the commission of the robbery, proof of this element of the crime was dependent on circumstantial evidence. While the proof, in light of the affirmance at the Appellate Division, must now be viewed most favorably to the People, its sufficiency must be assessed in terms of whether the inferences which the jury must have drawn in order to convict are to be found in the evidence adduced at trial (People v Piazza, 48 NY2d 151, 158-159; People v Kennedy, 47 NY2d 196, 202-203). That means that the foundation for the finding of guilt may not be based on conjecture or suspicion but on facts and inferences which "common human experience would lead a reasonable man, putting his mind to it, to * * * accept” (People v Wachowicz, 22 NY2d 369, 372; People v Castillo, 47 NY2d 270, 277).
Decisional law tells us that, though the statutory ground upon which the first degree robbery count was brought is not explicit in that regard (Penal Law, § 160.15, subd 3),[1] the jury was required to find that Turrell actually possessed a dangerous instrument at the time of the crime (see People v Early, 59 AD2d 912; People v Briggs, 52 AD2d 1053).[2] To that end, *408 the prosecutor’s voluntary disclosure form and his argument at the trial made clear that the People were proceeding upon the theory that the concealed weapon with which Turrell exercised duress on Irons was the knife later found in his accomplice Pena’s possession. As we analyze the record, the jury indeed could have found this the most natural inference to be drawn.
Only about 20 minutes and several city blocks separated the defendants from the time and scene of the crime when they were apprehended. Pena was then holding a knife inside a brown paper bag similar in appearance to the one which Irons had so recently seen in Turrell’s possession. That Turrell’s verbal threat was to shoot Irons rather than to stab him did not necessarily negate the inference that the knife was, in. actuality, the dangerous weapon then utilized by the robbers. It is conceivable that a mugger, relying on a knife to support his depredations, may nevertheless find it convenient to advantage himself of the fact that his weapon was masked, as it was by the bag in this case, to allow him to discourage his victim from any attempt to flee with the suggestion, founded or not, that escape would be intercepted by a bullet. Furthermore, the "threatened] immediate use” of a dangerous instrument to which subdivision 3 of section 160.15 speaks requires no correspondence between the content of any verbal threat and the instrumentality behind it. The "use” or "threaten[ed] immediate use” need not be accompanied by any statement. For example, the .brandishing of a weapon might be enough. So would a display of what appears to be a firearm (Penal Law, § 160.15, subd 4). It therefore sufficed, if found by the jury, that a threat brought home, as in this case, by Turrell’s thrusting his hand, which held the concealed instrument, toward the victim, in fact represented the imminent use of force by means of an instrument "readily capable of causing death or other serious physical injury” (Penal Law, § 10.00, subd 13; see People v Woods, 41 NY2d 279, 283).
True, there was no direct evidence that Turrell and Pena had exchanged possession of the bag or knife during the brief period between the robbery and their arrest. And, concededly, at trial Irons could not say for certain whether the bag found in Pena’s hands was the very same one he observed in Turrell’s. But the Trial Judge was both correct and realistic in demanding no more positive identification as a predicate for the admission into evidence of the bag found on Pena than *409 that it "looked like” the one Irons had seen on Turrell (see People v Mirenda, 23 NY2d 439, 453 [eyeglasses "resembled”]; People v Miller, 17 NY2d 559 [guns "look like”]; People v Randolph, 40 AD2d 806 [gun "like the one”]; Fisch, New York Evidence [2d ed], § 133, p 77). Midst the surrounding circumstances this was sufficient to permit the jury to find, as it apparently did, that the bag was the one used in the commission of the crime.
That it would also have been possible for it to reach a contrary conclusion is no answer. As on all issues which stand or fall on circumstantial evidence "[a] choice between competing inferences, as a choice between competing facts, is available to the trier of facts so long as the one arrived at is found beyond a reasonable doubt” (People v Castillo, 47 NY2d 270, 277, supra; see People v Bracey, 41 NY2d 296, 302). So too, at this stage of the litigation, it is enough that, though it was possible to draw the inference that either Pena or Turrell in the short span between crime and capture had somehow obtained and placed a knife in the brown paper bag, or the inference that the knife was in it when the threat was delivered, taking "the whole complex of interrelated information” which was presented (People v Kennedy, 47 NY2d 196, 201, supra), the jury was entitled to discount the former inference as an unreasonable one (People v Bracey, supra). In all, we cannot say that a prima facie case was not made out.
We now consider appellants’ claims that their constitutional rights of confrontation were abridged when the Trial Judge disallowed any questioning regarding the juvenile complainant’s Family Court adjudication. The issue arose when, during the hearing on defendants’ motion to suppress their confessions, a notation in the arresting officer’s memo book, which had been furnished to defense counsel for impeachment purposes (see People v Rosario, 9 NY2d 286), revealed that Irons was "previously known” to the officer. This alerted appellants to the existence of the complainant’s juvenile arrest record. In response to the District Attorney’s pretrial motion to preclude appellants from making any reference to Irons’ juvenile record, which by law was required to be kept confidential (see Family Ct Act, § 784), counsel for Turrell did no more than state that he "intend[ed] to ask the officer if he knew the complainant before”. Although the Trial Judge indicated he would allow this manner of inquiry, defense counsel never availed himself of the opportunity.
*410 Nor was any other objection or request made by counsel for either defendant, not even when Turrell’s counsel made the seemingly inexplicable remark that the then 16-year-old witness "ha[d] a record as an adult”. And, neither registered any protest when the Trial Judge in colloquy opined that there should be no probing about any offense committed by Irons as a minor (but cf. Davis v Alaska, 415 US 308; People v Gissendanner, 48 NY2d 543). Consequently, the point now raised was not preserved for review.
Next, turning to defendants’ contentions that reversible error was committed in the course of the charge to the jury, we find that only one was preserved for our review (CPL 470.05,. subd 2). That is defendants’ assertion that the Trial Judge impermissibly restricted the jury’s right to have testimony or parts of the charge read back to it during its deliberations. Critical was the following language "let me tell you something, this is, in no way, intimidating you. You heard it here yesterday. Don’t tell me you haven’t heard it. If you were paying the attention that these gentlemen were, and I was, you should be able to reconcile those matters in there. It’s at your disposal, but see if you can do it in there. This should be your last resort.” On their face, these instructions do have an inhibiting sound. In voicing their objection, defendants’ counsel not only informed the court that "it wasn’t clear * * * that each juror had the right to hear the testimony read back”, but respectfully characterized the Judge’s admonition as a "gentle coercive”.
For self-evident reasons, when, in the course of their consideration of a case, jurors find the need to refresh their recollection or more fully comprehend any part of either the trial testimony or the instructions they have received on the law, they are privileged to have these read back (see PJI 1:24; 1 Devitt and Blackmar, Federal Jury Practice and Instructions [3d ed], § 18.11). Any judicial concern that the procedure may be abused is not to be manifested by discouraging the jury from employing it, but, where occasion arises, by a tactful and restrained exercise of the measure of discretion Trial Judges retain as to their manner of complying with such requests (cf. 50 ALR2d 176). However, better as it would have been had the advice to the jury been phrased in less forbidding tones, in the context of the related portions of the charge on this subject we cannot say that the instruction as a whole adversely affected the jury’s actions in this regard.
*411 The paragraph in which the flawed language occurred was preceded by the following one: "If, at anytime, you feel that you cannot recollect, by discussion, as to what it was, you have a right to request, by giving it to the Forelady in question form, that you want certain testimony read or you want something in my charge, and I’ll tell you what my charge was. Or, if you want to bring in the exhibits, you have a right to have the exhibits brought in right now, or send for them, at anytime. These are the things that are at your disposal”. This unqualified offer was followed immediately by the court’s co-operative advice that the jury would be provided with a pad "in case there are any questions”. Moreover, cushioned by these ameliorating comments, the over-all connotation perceived by the jury was a sufficiently unrestraining one for it to have later asked for and received supplemental instructions without untoward incident.
Finally, we remark on defendant Pena’s claim that he was penalized for exercising his right to a jury trial by the imposition of a heavier-than-promised sentence. It appears that the District Attorney had initially offered Pena, a second felony offender, the option of pleading to third degree robbery and receiving a two- to four-year term of imprisonment on the condition that he make a statement inculpatory of Turrell and testify against him. However, when, perhaps because Turrell’s own subsequent refusal to plead guilty made the prospect of taking the stand more real, Pena began to balk at fulfilling his part of the bargain, the prosecutor withdrew his earlier plea offer, as he had a right to do (CPL 220.30, subd 3). The District Attorney then gave Pena the choice of either pleading to the entire indictment on the understanding that he would recommend a three- to six-year sentence, or of going to trial. The defendant chose the latter. Subsequently, after Pena had been convicted, the Judge, relying on the recommendation of the postconviction probation report, fixed a 5- to 10-year term of imprisonment.
From the fact that the court had been willing to accede to the District Attorney’s recommendation as to sentence in a plea bargaining context, it does not follow that it was not free, once the defendant was found guilty, to impose a greater, but nevertheless lawful, term of imprisonment. It is not now to be questioned that a State may encourage a guilty plea by offering substantial benefits, notwithstanding the fact that every such instance is bound to have the concomitant effect of *412 discouraging a defendant’s assertion of his trial rights (Corbitt v New Jersey, 439 US 212, 219-221; Bordenkircher v Hayes, 434 US 357, 364). Given that the quid pro quo of the bargaining process will almost necessarily involve offers to moderate sentences that ordinarily would be greater (see Adelstein, Negotiated Guilty Plea: A Framework for Analysis, 53 NYU L Rev 783, 802-807, 820-823; cf. People v Selikoff, 35 NY2d 227, 233-234), it is also to be anticipated that sentences handed out after trial may be more severe than those proposed in connection with a plea. Since no more than this emerges from the record here, it cannot be said that Pena was punished for refusing to accept the plea bargain.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
In each case: Order affirmed.

. The statute provides: "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime * * * 3. Uses or threatens the immediate use of a dangerous instrument”.

. Subdivision 3 of section 160.15 of the Penal Law was apparently intended to take into account the gravity of the threat faced by the robbery victim as well as the nature of the force employed by the robber. Its predecessor statute was far less precise, specifying as an aggravating circumstance that the perpetrator was "armed with a dangerous weapon” (Penal Law of 1909, § 2124, subd 1); it permitted the prosecution for first degree robbery whether the culprit openly menaced the victim with a shotgun or, without issuing any threat to use it, merely had, let us say, a penknife in his pocket. The more subtle grading scheme introduced by the revised Penal Law somewhat mitigated this problem. Thus, only one who commits robbery while carrying a "deadly weapon” upon his person is now guilty of robbery in the first degree (emphasis added). (Penal Law, § 160.15, subd 2; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 10.00, p 22.) However, if he does not carry a weapon classified as "deadly” but instead a more broadly defined "dangerous instrument” (Penal Law, § 10.00, subd 13), the statute now requires a showing not merely of possession but of "use” or threatened "immediate use”, on the theory that it was the employment of such an instrumentality that was significant (see People v Iglesias, 40 AD2d 778; cf. Model Penal Code, § 221.1, Comments [Tent Draft No. 11], p 70).