Grace M. Caporino, Individually and as Administratrix of the Estate of Gabriel A. Caporino, Deceased, Appellant-Respondent, v Travelers Insurance Company, Respondent, and Aetna Life Insurance Company et al., Appellants.

First Department, July 21, 1983

APPEARANCES OF COUNSEL

*Emilio Nunez* of counsel (*Pamela Anagnos Liapakis* and *Cheryl R. Eisberg* with him on the brief; *Lipsig, Sullivan & Liapakis, P. C.,* attorneys), for appellant-respondent.

*Martin M. McGlynn* of counsel (*McLaughlin, Simone & Lawlor,* attorneys), for respondent.

*Richard A. Soberman* of counsel (*John J. Palmeri* with him on the brief; *Palmeri & Gaven,* attorneys), for Insurance Company of North America, appellant.

*Benjamin Vinar* of counsel (*Thomas R. Newman* with him on the brief; *Siff & Newman, P. C.,* attorneys), for Aetna Life Insurance Company, appellant.

*Ferdinand M. Schwartz* of counsel (*Schechter, Schwartz & Greenberg,* attorneys), for Prudential Insurance Company of America, appellant.

OPINION OF THE COURT

BLOOM, J.

Plaintiff is the administratrix of Gabriel A. Caporino, her late husband. She sues both as administratrix and in her own right to recover on double indemnity and accidental death provisions contained in policies of insurance issued by the named insurers on the life of Gabriel. Additionally, she seeks recovery on an additional supplemental rider issued by defendant Travelers and payable in the event of death resulting from bodily injuries caused through external, violent and accidental means.

Gabriel Caporino was an intermediate level executive with General Foods Corporation. In early March, 1974 he attended a conference of General Foods executives in New Orleans. On March 7, 1974 he telephoned his wife at their Westchester home to advise her that he would be returning home the next day and that he had arranged with Dominick DeNardo, a close friend, to pick him up at Newark Airport. During the course of the conversation he informed her that on his final night in New Orleans he had intended to go to the French Quarter to hear Louis Prima and Al Hirt play New Orleans jazz.

Caporino did not appear at Newark Airport the following day. DeNardo telephoned Mrs. Caporino to so inform her. A call to the New Orleans hotel at which Gabriel had been staying disclosed that his bed had not been slept in the previous night. His valises, partially packed, were in the room as were souvenirs of the trip, presumptively to be given to his wife and two daughters, and, perhaps, a friend or two.

An intensive manhunt was begun. Private investigators hired both by Mrs. Caporino and General Foods were called in. The New Orleans police as well as the FBI participated. The media was enlisted and a massive campaign ensued. Ultimately, a CBS television program was aired. The only results were the discovery, some 10 days or so after March 7, 1974, of the automobile which had been rented by

Gabriel while he was in New Orleans which was parked in a middle-class neighborhood, across town from the hotel in which he had been staying. Investigation disclosed that it had been parked in the same place for over a week. At the time it was found the keys were still in the car. Also ascertained was the fact that a camera, a shirt and a pair of pants had been purchased at the New Orleans branch of Sears, Roebuck four days after Gabriel had last been heard from and that these items had been charged on one of his credit cards. Comparison of Gabriel's signature with those on the credit slips by FBI experts disclosed that the signatures on the credit slips were forgeries. A check with the sales person who made the sale indicated that two males and one female were present at the time of purchase although only one made the purchase. They were described by the sales person as "hippie types".

Despite the intensiveness of the search, which included the retention of a psychic, and the resources employed, nothing was heard of or from Gabriel Caporino after March 7, 1974 and no body has ever been found.

The record reflects a warm, loving and stable relationship not only between plaintiff and Gabriel Caporino, but with their two daughters as well as with Gabriel's expanded family, his five brothers and three sisters and their numerous children.

In 1979 Mrs. Caporino applied to the Surrogate's Court, Westchester County, for letters of administration of the estate of Gabriel. By decision dated November 1, 1979, the Surrogate concluded that, pursuant to EPTL 2-1.7, Gabriel must be presumed to be dead. Since there was no proof that Gabriel had been "exposed to a specific peril of death" (EPTL 2-1.7, subd [a], par [1]) he fixed the date of death as March 7, 1979, as, by the statute, he was required to do.

Following the granting of letters of administration to Mrs. Caporino, she made application to the four insurance companies for payment of the proceeds of the policies issued on the life of Gabriel. All paid the face amounts required to be paid on death. However, they balked at payment under the double indemnity and accidental death provisions, and in the case of Travelers, under the supple-

mental rider, on the ground that the proof of death by accidental, external and violent means had not been met. This action was then brought. During the pendency of the action the Social Security Administration, which in 1977 had concluded that Gabriel was dead and had awarded his widow and children survivors' benefits, revised its award and held that Gabriel had died on March 7, 1974 and granted her and the children retroactive benefits.

Travelers first moved for summary judgment. Following the granting of summary judgment to Travelers, Aetna, INA and Prudential moved separately for the same relief. Those motions were consolidated and denied. Plaintiff appeals from the order granting summary judgment to Travelers, while Aetna, INA and Prudential appeal from the separate orders denying that relief to them.

The Aetna and INA policies, required, as a condition of payment or additional payment, proof that the death of the deceased occurred as a result of accidental bodily injuries from the hazards insured against, independently of all other causes. We are all in agreement that sufficient has been shown to raise an issue of fact as to the manner of Gabriel's death. As to them, therefore, the motion for summary judgment was properly denied.

Our difference with our dissenting brethren over the Travelers and Prudential policies stems from the wording contained in those policies. The Travelers policy provides that the additional indemnity shall be payable: "in the event of the death of the Insured under the said Life Contract immediately upon receipt of due proof that the death of the said Insured has resulted from bodily injuries effected directly and independently of all other causes *through external, violent and accidental means* within ninety days from the date of the accident which shall have caused such injuries *and of which,* except in the case of drowning or internal injuries revealed by an autopsy, *there is a visible contusion or wound on the exterior of the body,* and provided such death does not result from a risk stated herein as not assumed". (Emphasis supplied). The Prudential policy contains language substantially similar to the language contained in the Travelers policy. From this it is argued that since no body was ever found, plaintiff has

failed to demonstrate the existence of "a visible contusion or wound on the exterior of the body"; by consequence, she has failed to establish a condition precedent to recovery and judgment must be for the insurers.

On argument questions were put to counsel for Travelers and Prudential relating to whether, under the terms of the policies, recovery would ever be warranted in the absence of production of a body showing a visible contusion or wound. As hypothetical illustrations were put to them they conceded that there could be such instances. In sum, they conceded that proof of death through external, violent and accidental means by circumstantial rather than by direct proof which included proof of a visible contusion or wound on the exterior of the body, would meet the requirements of the policy.

Circumstantial evidence, though encountered most frequently in the field of criminal law is equally applicable to civil law. It is "evidence of a collateral fact, that is of a fact other than a fact in issue, from which, either alone or with other collateral facts, the fact in issue may be inferred" (Richardson, Evidence [10th ed], § 145). Whether or not such evidence is sufficient to pose a fact question depends on whether (1) the ultimate fact to be established flows naturally from the facts in evidence (2) the facts proved are consistent with the ultimate fact to be established and (3) the facts proved exclude "to a moral certainty" any conclusion other than the ultimate fact to be established (*People v Piazza,* 48 NY2d 151, 158-159; *People v Benzinger,* 36 NY2d 29, 32; *People v Wachowicz,* 22 NY2d 369, 372; *People v Borrero,* 26 NY2d 430, 434-435). That does not mean that competing inferences are impermissible or that the inferences must be such that only one choice may rest with the trier of the facts.

It is sufficient if the trier of the fact concludes, by the standard of proof applicable to the case, that, of the inferences to be drawn from the facts proved, the ultimate fact is established (*People v Castillo,* 47 NY2d 270, 277).

Judged by these standards we think that enough has been shown by plaintiff to create an issue of fact as to whether Gabriel, whose death is now conclusively pre-

sumed, met his death by "external, violent, and accidental means" and that the absence of his body does not automatically preclude the right of his widow and administrator to collect on the double and supplementary indemnity clauses of the Travelers and Prudential policies. That issue of fact is to be determined by the trier of the fact at a plenary trial. It may not be decided as a matter of law.

Accordingly, the order of the Supreme Court, New York County (ANDREW R. TYLER, J.), entered January 8, 1982 (appeal No. 17031), granting the motion of defendant Travelers Insurance Company for summary judgment is reversed on the law and the motion denied with costs.

The separate orders of the Supreme Court, New York County (JEROME MARKS, J.), each entered August 5, 1982 (appeals Nos. 17032, 17033, 17034), which denied the separate motions of Aetna Life Insurance Company, Insurance Company of North America and Prudential Insurance Company of America for summary judgment are affirmed, with costs.

ASCH, J. (dissenting in part). We are concerned in this action solely with accidental death benefits from insurance policies issued by the defendant insurers to plaintiff's husband, Gabriel A. Caporino. The defendants have already made basic life payments on each policy where applicable.

Special Term in its decision of August 2, 1982, denying the motions of Aetna Life Insurance Company, Insurance Company of North America and the Prudential Insurance Company of America for summary judgment, asserted that the language in their policies and that contained in the policy issued by defendant Travelers Insurance Company was "relatively similar". The provisions are similar but they are not identical in language.

The Travelers policy states that the additional indemnity shall be paid "immediately upon receipt of due proof that the death of the said Insured has resulted from bodily injuries effected directly and independently of all other causes through external, violent and accidental means within ninety days from the date of the accident which shall have caused such injuries and of which * * * there is a visible contusion or wound on the exterior of the body".

The policy of the Prudential Insurance Company similarly has a clause under the heading "Accidental Means Death Benefit as Limited and Defined Herein" which reads, in pertinent part, "[T]he Company will pay the amount of the Accidental Means Death Benefit * * * upon receipt at the Home Office of due proof that the death of the Insured occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means. The aforesaid injuries must be evidenced by a visible contusion or wound on the exterior of the body except in the case of drowning or of internal injuries revealed by an autopsy. The Company shall have the right and opportunity to examine the body and, unless prohibited by law, to make an autopsy".

Both defendants Travelers and Prudential are entitled to have their contracts of insurance enforced without a construction contrary to their express terms (*Weil v Globe Ind. Co.,* 179 App Div 166). Courts cannot change terms by judicial construction, even in cases involving exemptions from liability, where the terms are free from ambiguity and uncertainty as to meaning (see 29 NY Jur, Insurance, § 606, p 594). Both of these policies require "a visible contusion or wound" on the exterior of the body. Thus, it has been held where an insured died from sunburn that the effects of sunstroke did not constitute proof of a "visible contusion or wound on the exterior of the body". The court there recounted that medical testimony in the trial would lead to the conclusion that sunburn was a "wound" but that the language in insurance policies is not to be construed like words of art but given such meaning as the average policyholder, as well as the insurer, would attach to it (*Dupee v Travelers Ins. Co. of Hartford, Conn.,* 253 App Div 278, 279; see, also, *Johnson v Travelers Ins. Co.,* 269 NY 401, 407-408; *Breslow v Manhattan Life Ins. Co.,* 36 AD2d 676).

A fortiori, in the instant action, where there is no body, the terms of the contracts of insurance of Prudential and Travelers have not been met, since these terms are to be taken and understood in their plain, ordinary and popular sense (*Mansbacher v Prudential Ins. Co. of Amer.,* 273 NY 140; *Johnson v Travelers Ins. Co., supra*).

The two remaining policies, however, do not contain the above express, limiting language. Accordingly, in these policies issued by Aetna and the Insurance Company of North America, proof that the insured's death was caused solely through "external, violent or accidental means" need not be by direct evidence, as asserted by defendant insurers, but may be by indirect or circumstantial evidence. The applicable rule of law in the absence of any policy provisions to the contrary is that the time of death and the fact that the death of the insured resulted from accidental means may be proven by circumstantial evidence, and it is sufficient if there is a preponderance of the evidence whether direct or circumstantial on such an issue (see *Ursaner v Metropolitan Life Ins. Co.,* 274 App Div 77, affd 299 NY 730; *Melbourne Airways & Air Coll. v Thompson,* 190 So2d 305 [Supreme Ct, Fla]; *Firemen's Fund Amer. Life Ins. Co. v Wohl,* 334 So2d 261 [Dist Ct of App, Fla]).

Thus, an issue of fact was raised below as to whether Aetna and INA would be liable for accidental death pursuant to their policies of insurance.

Parenthetically, I note that the policy of INA insured, *inter alia,* against hazards to which the insured may be exposed, during travel on the business of the policyholder (decedent's employer). Under the heading "Exposure and Disappearance", the policy reads, in pertinent part, "If the body of the Insured has not been found within one year of the disappearance, stranding, sinking or wrecking of any vehicle in which the Insured was an occupant, then it shall be presumed * * * that the Insured has suffered loss of life covered under this policy." This appears to raise a further issue as to whether the insured's disappearance from the rental automobile would fit these terms and thus impart liability to this insurer on an additional basis.

Accordingly, the order of Special Term (ANDREW R. TYLER, J.), entered on January 8, 1982, which granted defendant's the Travelers Insurance Company's motion for summary judgment, should be affirmed. The order of Special Term (JEROME MARKS, J.), entered on August 5, 1982, which denied the motion of the defendant Prudential Insurance Company of America for summary judgment,

should be reversed on the law, and the motion granted. The orders of Special Term (JEROME MARKS, J.), both entered on August 5, 1982, which denied the motions of defendants Aetna Life Insurance Company and the Insurance Company of North America for summary judgment, should be affirmed.

KUPFERMAN, J. P., and ROSS, J., concur with BLOOM, J.; SANDLER and ASCH, JJ., dissent in part in an opinion by ASCH, J.

Order, Supreme Court, New York County, entered on January 8, 1982, reversed, on the law, and the motion denied. Plaintiff-appellant-respondent shall recover of defendant-respondent $75 costs and disbursements of this appeal. Three orders of said court, all entered on August 5, 1982, affirmed. Plaintiff-appellant-respondent shall recover of defendants-appellants one bill of $75 costs and disbursements of these appeals.