People v S. (2025 NY Slip Op 51867(U))

[*1]

People v S.

2025 NY Slip Op 51867(U)

Decided on November 24, 2025

Justice Court Of The Village Of Piermont, Rockland County

Ruby, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 24, 2025
Justice Court of the Village of Piermont, Rockland County

The People of the State of New York, Plaintiff,

against
S., Defendant.

Case No. 24-11-0050

For the People: Rockland County District Attorney's Office; New City, NY
For the Defense: Robert C. Zitt, Esq.; Law Office of Robert C. Zitt, P.C.; New City, NY

Marc R. Ruby, J.

SYNOPSIS & PROCEDURAL POSTURE
The Defendant [FN1]
stands charged with single counts of contravening NY PENAL LAW § 130.52 (1), Forcible touching (alternatively "forcible touching", "forcibly touching" or, "forcibly touched" herein); and, NY PENAL LAW § 260.10 (1), Endangering the welfare of a child (alternatively "endangering", "endangered", or "endangerment" herein). Both offenses are Class A misdemeanors.
In advance of an impending jury trial, both the People and Defense filed various evidentiary motions in limine. All of these motions remain pending, and undecided. For reasons discussed herein, the Court previously denied the part of the Defense's omnibus motion seeking a Bill of Particulars ("BOP"). Nonetheless, upon initial consideration of the motions in limine, the Court is now exercising its inherent power, and Ordering the People to file a BOP sua sponte. In addition, significant charging distinctions between the two offenses are discussed. 
BACKGROUND
In November 2024, the People filed two accusatory instruments; one charging the Defendant with a single count of Forcible touching; the other charging the Defendant with a single count of Endangerment.Factually, the People contend, the Defendant engaged in criminal conduct by forcibly touching the Complainant within the Village, during an incident in December 2022. And in so doing, the People further contend the Defendant thereby criminally endangered the Complainant.
The interplay between the charges is readily plain, because the language charging the Defendant with endangerment is the mirror image of the language charging the Defendant with forcible touching. Accordingly, inasmuch as the endangerment charge is effectively conjoined with the forcible touching charge, the Defendant cannot have committed endangerment, unless the Defendant forcibly touched the Complainant during the Christmastime incident. This charging scheme where a single count of a non-continuing offense is conjoined with a potentially continuous offense carries enormous legal significance. Because while prosecutors frequently charge forcible touching and endangerment in-tandem, these offenses bear radical factual, and legal distinctions. 
Factually, endangerment proscribes sweeping behavioral acts, when knowingly committed:
A person is guilty of endangering the welfare of a child when:
He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old [ ]. NY PENAL LAW § 260.10 (1)
Meanwhile, forcible touching proscribes far more specific behavioral acts, when committed for degradation or gratification:
A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose:
Forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire; NY PENAL LAW § 130.52 (1)
Needless to say, it is "easier" to commit endangerment than forcible touching. This is almost certainly why prosecutors frequently charge these offenses in-tandem. The theory being: 1) The defendant has a way out, by pleading to endangerment, in satisfaction of the forcible touching; or, 2) If there's a trial, the jury will have an option of compromising, by acquitting on forcible touching, while convicting on endangerment. 
At this point the distinctions between "charges", "incidents", "episodes", "counts", "offenses", and "crimes", as used herein, warrants discussion. The "charges" are the two accusatory instruments. The defendant is "charged" (accused of) with committing forcible touching and endangerment; hence the Defendant is "charged" with committing two "crimes." These "charges" arise from the alleged "incident" or "episode" on the couch, during Christmastime of 2022, in Piermont, NY Since this is the singular "incident" described in the "charges", there is but a "single count." In other words, the "charges" allege the Defendant committed each "crime" only once, and during the "incident."
This is because (with very particular exceptions), where a defendant is accused of committing the same crime, but on multiple occasions, the defendant is charged with multiple counts one count for each time the same crime was allegedly committed. An "offense" is short for "criminal offense"; in other words, an "offense" is the "crime." A crime is action, conduct, or behavior that is proscribed by the Penal Law with the qualification that the person acting, or behaving in such proscribed manner, frequently must be behaving or acting with a culpable mental state. (See above: "knowingly"; "for the purpose of degrading"; "for the purpose of gratifying").
Here, the misdemeanor complaint charging forcible touching states that at some point during December 2022, within the Village of Piermont, NY, an incident transpired, where the Defendant allegedly grabbed the Complainant's penis, through his pants, whilst one of, or both the Defendant and Complainant were sitting on a couch.
But when this complaint is read holistically with the accompanying supporting depositions, and thereby converted into an information, details emerge. The location is still within Piermont. But this incident is now taking place at "Christmastime." The Complainant and [*2]the Defendant are together on the couch, watching Elf. Apparetnly the Defendant isn't engrossed in the film, because the Defendant stops scrolling through Facebook, reaches over, and grabs the Complainant's penis, through his pants. After holding the Complainant's penis for a few seconds, the Defendant gets up, uses the bathroom, makes coffee, reassumes position on the couch, and resumes scrolling through Facebook.
Then, about two months after the charges were filed, the People disclosed a summary of a subsequent interview with the Complainant, where the Complainant says the Defendant made a move to grab his penis, at which point, he jumped up and went to the bathroom. Needless to say, this account is not at all congruent with the Complainant's deposition. And although, when interviewed, the Complaint recounted other occasions where "he would get up and leave", when the Defendant "was in the process of, or partially touching his penis", the People have not charged the Defendant with committing crimes on these "other occasions."
Often, where a witness has given differing accounts, lawyers attempt to exploit the discrepancy. The well-worn routine goes like this:
Q: "Sir, the incident took place in June, correct?
A: "Yes."
Q: "And in June, isn't it true that you said the driver of the car was wearing a hat?"
A: "Yes, I believe I may have."
Q: "You believe you may have said that, or you did say that?"
A: "I did say the driver was wearing a hat."
Q: "Right. But then, in July, you said the driver wasn't wearing a hat."
A: "Yes. After thinking about it more, I remembered the driver wasn't wearing a hat."
Q: "So are you really telling this jury that your memory of June was better in July?"
Yet, here, both the February 18, 2025 interview, and the November 14, 2024 deposition, were given long after Christmastime of 2022. Compounding the seemingly differing accounts, given years later, are references to other incidents. And these other purported incidents are precisely why things have now come to a head.
At the threshold of trial (in limine), among other things (inter alia), the People are asking the Court to let the jury hear testimony from the Complainant regarding other purported incidents where the Defendant allegedly committed these crimes. This is controversial because the People have not charged the Defendant with criminal conduct arising from these other purported incidents. If the People had charged the Defendant over the other incidents, the Defendant would have been charged with multiple counts.
Other incidents such as these are called "uncharged crimes" or "prior bad acts." For [*3]centuries, prosecutors have asked courts to allow juries to hear about "uncharged crimes" or "prior bad acts" in pursuit of convictions for (the arguably unrelated) incidents forming the basis of charges. And for centuries, defenders have vigorously opposed these requests. While there are volumes of applicable caselaw, this Court is unable to render a corresponding decision.
After all, the facts [FN2]
 underpinning the incident the People are charging the Defendant over, are objectively obscured by unexplained incongruence if not sheer contradiction. As such, there is far less certainty that the Defendant may have committed these offenses, than there was at the time the charges were filed. Since any degree of certainty surrounding the charges is so reasonably questionable, this Court will not even begin entertaining the proposition of allowing a jury to hear about incidents which the Defendant is not charged over.
The Court of Appeals has held that an accusatory instrument (charge), or a BOP, must state the specifics necessary to give the defendant and the court reasonable information regarding the nature and character of the crime charged. People v. Morris, 61 NY2d 290, 294 (1984). As indicated, the Court recently denied a component of the Defendant's omnibus motion seeking a BOP under a written September 17, 2025 decision. This was because the denied BOP application did not mention, attach, or contrast the interview disclosure and supporting depositions.[FN3]
[*4]Nevertheless, these issues are now squarely presented, and demand the Court's attention.
LEGAL ANALYSIS
While Frequently Charged Together, Forcible Touching and Endangerment Vary Significantly
Endangerment can be a continuing crime, committed by the aggregation of multiple separate acts, without any single act being per se criminal. People v. Atkins, 55 Misc 3d 1208[A] *4, 2003 NY Slip Op 50466 [U] (Crim Ct, Bronx County 2017). On the other hand, forcible touching is committed by a singular act, without continuation into a subsequent incident. People v. Gelin, 2002 NY Slip Op 50512[U] (Crim Ct, Kings County 2002). Accordingly, each count in an accusatory instrument charging forcible touching, relates to a separate criminal incident. People v. Castillo, 47 NY2d 270, 273 (1979); People v. Stanley, 81 AD2d 842, 843 (2d Dept 1981). If a count alleges the commission of forcible touching by repeated occurrences, throughout a designated period, the count is duplicitous. People v. Smiley, 28 Misc 3d 1229 (A) *3, 2010 NY Slip Op. 51541[U] (Crim Ct, Queens County 2010). For example, a single count can charge a defendant with engaging in a course of conduct which endangered a complainant throughout the summer. Yet, if a defendant is accused of forcibly touching a complainant on Memorial Day, on the Fourth of July, and again on Labor Day, the defendant must be charged with three separate counts.
Here, the scheme under which the Defendant is charged, carries highly significant legal ramifications. While endangerment can be charged as continuous crime under Atkins, each instance of forcible touching must be charged under a separate count, pursuant to Gelin, Castillo, and Stanley. Yet, because the charges mirror each other, the Defendant cannot be convicted of endangerment, without being convicted of forcible touching on the couch, at Christmastime of 2022. Furthermore, the People cannot cobble separate and distinct "incidents" together, in pursuit of an aggregated forcible touching conviction. In other words, deficiencies in proving the defendant forcibly touched the Complainant at Christmastime of 2022, aren't curable by attempting to show the Defendant was engaged in a pattern of forcibly touting the Complainant. [*5]People v. Castillo, 47 NY2d 270, 275 (1979).
Inherent Power to Order the Filing of a BOP Whenever the Court Deems Necessary
The procedure surrounding BOPs accompanying justice court informations and misdemeanor complaints, is codified under NY CRIM. PROC. LAW ("CPL") § 200.95. See CPL § 100.45. It is well-settled that trial courts have inherent jurisdiction and authority for requiring the filing of a BOP to elicit information needed for the preparation of a defense. State v. Harvey, 55 AD2d 716 (3d Dept 1976); People v. Wright, 172 Misc 860 (Columbia County Ct 1940). But the authority runs even deeper. A trial court may inherently order the filing of a BOP whenever (emphases added) it is necessary for the court to receive information as to the nature and character of the crime charged. People v. Cavalier, 57 Misc 2d 695 (Suffolk Dist Ct, 1st Dist 1968); People v. Seeley, 75 NYS 2d 833, 835 (Rockland County Ct 1948). Once filed, a BOP can used by a court to satisfy the certainty of crimes charged in the accusatory instruments. People v. Berkowitz, 7 AD2d 1031 (2d Dept 1959). The power to order a BOP sua sponte is so fundamental that an order for an amended BOP has been upheld even where the order was construed as coaching the People's case. People v. Griffin, 9 AD3d 841 (4th Dept 2004).
Here, no one can reasonably maintain the instant order is coaching the People, as in Griffin, because the People never filed a BOP in the first instance. If anything, this Order forces the People's consideration of whether they even have a case against the Defendant. Without pulling punches, this Court is no longer satisfied of the certainty as to the crimes charged, pursuant to Berkowitz. If a case does lie against the Defendant, the charging scheme demands the People thread a needle, with the narrowest of eyes. 
There can be no dispute that the People only levied one count of forcible touching and one count of endangerment against the Defendant. While there is chatter about "other" incidents, the only incident giving rise to both charges (forcible touching & endangerment) is the incident: in Piermont; on the couch; watching Elf; during Christmastime of 2022. As such, it seems to the Court, that the People must come forward with something establishing: the Defendant affirmatively grabbed the Complainant's penis, then got up went to the bathroom, returned to the couch, and that after (or perhaps before) the Defendant made a move to grab the Complainant's penis, the Complaint jumped up, and went to the bathroom. The litany of possibilities is dizzying:
1. Did the Defendant actually grab the Complainant's penis?
2. Or did the Defendant attempt to grab the Complainant's penis?
3. Did the Defendant make a move by using the Defendant's hand(s)?
4. If so, where was the Defendant's hand(s) before making a move?
5. Was the Defendant's hand(s) on the Complainant before it moved toward his penis?
6. Did the Complainant go to the bathroom?
7. Did the Defendant go to the bathroom?
8. Did the Defendant and Complainant both go the bathroom?
9. Did the Defendant and Complainant go the bathroom together?
10. Did the Defendant grab the Complainant's penis, come back to the couch, and make another move to grab his penis?
11. Did the Defendant try unsuccessfully to grab the Complainant's penis, only to come back and actually grab it?
12. Did the Complainant come back to the couch after having jumped up and gone to the bathroom, after the Defendant made a move for his penis? Since uncertainty exists under Berkowitz, information regarding the nature and character of the crimes charged, must be received, pursuant to Cavalier and Seeley. Accordingly, the Court exercises its inherent power, as collectively stated above, and hereby Orders the filing of a BOP. The BOP must address the unexplained incongruence if not overt contradictions between the depositions and the interview.
NOW THEREFORE, as set forth above, for good cause appearing to the Court, and under this Court's inherent authority:
A) This Order shall not take effect immediately. Instead, this Order's effect is STAYED, as set forth below.
B) The People shall notify this Court within two (2) days of this Orders' date, if the People are opposed to filing a BOP, and/or if the People are requesting a hearing on the matter.
C) If the People do not notify the Court as set forth in Part B above, the stayed effect of this Order shall lift mechanically, and the People shall file a BOP, and serve same upon the Defense, within ten (10) days of this Order's date.
D) If the People express opposition to filing a BOP and/or request a hearing on the matter, this Order's effect shall remain stayed until after a decision is rendered following such opposition and/or hearing. E) The Court holds all pending motions in limine reserved for decision.
F) Except as provided herein (including the Defense's implicit right to respond to any opposition by the People), no further motions may be filed without advance leave of Court.
IT IS SO ORDERED.
24 November 2025
Piermont, N.Y.
Marc R. Ruby
Village Justice

Footnotes

Footnote 1:As with previous decisions and orders issued in this case, the Defendant's name is omitted from the caption. While this Court is not a court of record, and may lack express power "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it", available under Judiciary Law § 2-b, the Village's small geography and population give rise to privacy concerns. Accordingly, for reasons discussed (if not relied upon) in: Anonymous v. Anonymous, 154 Misc 2d 46 (Sup Ct, Nassau County 1992); Anonymous v. Anonymous, 70 AD2d 538 (1st Dept 1979); and, Doe v. MacFarland, 66 Misc 3d 604 (Sup Ct 2019), the Defendant is referred to as "S." in the caption.

Footnote 2:Of course, a discussion of associated legal issues will follow shortly.

Footnote 3:For avoidance of doubt, this is the verbatim application:
• In order for the Defendant to conduct a meaningful defense, it is necessary and essential to the defense that specific items of factual information, not recited in the accusatory instruments, be provided.
• The Defendant cannot adequately prepare or conduct [a] defense without the information requested.
• Defendant was first arraigned on these charges on November 7, 2024. The charges were dismissed for factual inconsistencies in the accusatory instruments, and subsequently re-filed on November 20, 2024.
• Pursuant to Criminal Procedure Law ("CPL") §§ 100.45 and 200.95, it is hereby requested that the District Attorney provide or produce the following information relating to the charges pending against the Defendant:
a. Whether the prosecution intends to prove that Defendant acted as:
i. Principal;
ii. Accomplice; or
iii. Both
b. State with sufficient specificity to understand the nature of the incident and exactly where the incident occurred.
• With respect to each count, please state the substance of the Defendant's conduct encompassed by the charge which the prosecution intends to prove at trial on its direct case.
• With respect to each count, please state the exact date and time of each alleged incident and, if more than one incident is alleged, state their sequence.
• With respect to each count, please state the exact location of each alleged incident.
• Request is further made that any Bill of Particulars and/or refusal to supply any of the requested material be made in writing setting forth the grounds for such refusal (CPL § 200.95(4)). A copy of such writing should be served upon the undersigned and filed with the Court within fifteen (15) days. Kindly serve the Bill of Particulars requested and/or any refusals at my office.
• Defendant requests that the Court issue an Order directing the prosecution to timely respond to this request, pursuant to CPL § 200.95(2), (5).