14-1675-pr
Lynch v. Superintendent Dolce

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2014

(Argued: May 7, 2015      Decided: June 18, 2015)

Docket No. 14-1675-pr

————————

ROBERT A. LYNCH,

*Petitioner-Appellant,*

— v. —

SUPERINTENDENT DOLCE,

*Respondent-Appellee.*[*]

————————

B e f o r e:

LEVAL, LYNCH, and DRONEY, *Circuit Judges.*

————————

————————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

Robert Lynch appeals from the denial of his petition for a writ of habeas corpus based on a claim of ineffective assistance of appellate counsel. Lynch's appellate counsel failed to raise the trial court's refusal to give a requested instruction on a necessary element of first-degree robbery, and instead raised significantly weaker issues, thus falling below objective standards of professional competence. The district court (Michael A. Telesca, *Judge*) denied Lynch's petition for habeas corpus, holding that the evidence presented at trial was sufficient for a rational jury to find that Lynch possessed his co-defendant's handgun at the time of the robbery. That was the wrong prejudice standard to apply. Applying the correct standard, we conclude that the state courts' dismissal of Lynch's claim was an unreasonable application of clearly established federal law, and that appellate counsel provided constitutionally ineffective assistance. We therefore REVERSE and REMAND with instructions to grant the writ conditionally.

———————

MALVINA NATHANSON, New York, NY, *for petitioner-appellant*.

MICHELLE E. MAEROV, Assistant Attorney General (Barbara D. Underwood, Solicitor General, Nikki Kowalski, Deputy

2

Solicitor General for Criminal Matters, *on the brief*) *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for respondent-appellee*.

———————

GERARD E. LYNCH, *Circuit Judge*:

Robert Lynch appeals from the denial of his petition for a writ of habeas corpus based on a claim of ineffective assistance of appellate counsel. The state court refused Lynch's trial counsel's request to charge the jury that, to find Lynch guilty of first-degree robbery by using or threatening the immediate use of a dangerous instrument, it had to find that Lynch actually possessed a dangerous instrument at the time of the crime. Although trial counsel made a full record on that request, and cited the applicable New York Court of Appeals case holding such possession to be a required element of the crime, Lynch's appellate counsel failed to raise the trial court's refusal to give the charge as an error. New York law is clear that Lynch was entitled to the requested instruction. Indeed, after the conviction – but before appellate counsel filed her opening brief – the Court of Appeals reaffirmed the possession requirement, making clear that refusal to give the requested instruction is reversible error. Appellate counsel's failure to raise that issue and her decision instead to raise weaker issues that were unlikely to

3

succeed fell below prevailing norms of professional conduct.  Further, given the weakness of the evidence that Lynch in fact possessed a weapon during the robbery, the instructional error was not harmless, and there is a reasonable probability that, had counsel raised the issue, the state appellate court would have reversed Lynch's conviction on the most serious count.

Lynch timely raised his ineffective assistance claim in a petition for a writ of error *coram nobis*, which was denied without explanation by the New York courts.  The district court (Michael A. Telesca, *Judge*) denied Lynch's federal petition for habeas corpus, holding that the evidence presented at trial was sufficient for a rational jury to find that Lynch possessed his co-defendant's handgun at the time of the robbery.  That was the wrong prejudice standard to apply.  Applying the correct standard, and in light of the evidence at trial and the pattern of the jury's verdicts, we conclude that the state courts' dismissal of Lynch's claim was an unreasonable application of clearly established federal law, and that his appellate counsel provided constitutionally ineffective assistance. We therefore REVERSE and REMAND with instructions to grant the writ conditionally.

## BACKGROUND

I.   <u>The Crime</u>

On October 28, 2004, Rachel Tally-Verstraten drove to the Family Dollar store in Rochester, NY, with her two children.  She parked next to a dark-colored Dodge Stratus, in which she saw two men sitting.  Tally-Verstraten got out of her car and opened the back door to get her younger daughter out of a car-seat.  She then felt someone come up behind her and "shove[ ] something" into her right side.  Joint App'x at 169.  Tally-Verstraten's assailant, later identified as Lynch, told her that he had a gun and would shoot her in front of her children if she did not relinquish her purse.  She looked down to see if Lynch did in fact have a gun and asked if he was kidding.  He replied, "[N]o, give me your purse or I'll hurt you and your kids."  Id.  Lynch then reached out and touched Tally-Verstraten's pocket; she pushed him back and told him not to touch her.  The two began to struggle over the purse; Lynch grabbed it, but Tally-Verstraten would not let go.  Lynch "cock[ed] his fist back" and hit Tally-Verstraten in the face.  Id. at 171.  She then released her grip on the purse.  Lynch got into the passenger side of the Stratus and he and the other man drove away.  Two witnesses saw the robbery: Ediberto Diaz, Sr., and his son, Ediberto Diaz, Jr.  By chance, the two Diazes

5

found themselves several minutes later driving behind the same Stratus they had seen at the Family Dollar. They observed the car enter a gas station and two men get out. The Diazes called the police. When the police arrived, the two men ran. Lynch was apprehended and told the officers, "I knew I shouldn't have gotten into that car." Id. at 184. Meanwhile, other officers arrested a second man, Rodney Brandon, and recovered an unloaded .22 caliber handgun from him, as well as ammunition he was carrying in a separate pocket. In a show-up procedure in the Family Dollar parking lot, the Diazes identified Lynch and Brandon; Tally-Verstraten stated that she was 80% certain that Lynch was the man who stole her purse, but that she could not identify Brandon. The purse was found in the Stratus. Lynch later made a statement to police, admitting that he had "run up on the woman and bumped her in the mouth." Lynch v. Superintendent Dolce, No. 12-cv-974 (W.D.N.Y. Feb. 26, 2013), ECF No. 11-3, at 78.

II.     The Trial

Lynch and Brandon were each indicted on two counts of first-degree robbery under New York Penal Law § 160.15(2) (armed with a deadly weapon) and § 160.15(3) (using or threatening the immediate use of a dangerous

6

instrument), and two counts of second-degree robbery under Penal Law

§ 160.10(1) (aided by another person) and § 160.10(2)(a) (causing physical injury

to a non-participant). Brandon was also indicted on two counts of criminal

possession of a weapon. The defendants were tried together.

At trial, Tally-Verstraten testified about her encounter with Lynch as

follows:

> Q: And did he touch you anywhere else at that point?
> A: He touched me like one hand on the left-hand side and like shoved something against my right-hand side waist (indicating).
> Q: Now could you tell what he was shoving?
> A: No.
> Q: Could it have been his fist?
> A: It could have been.
> Q: Once you felt that you must have reacted to it. What did you do?
> A: Um, I asked if he was kidding me.
> Q: Did you turn to face him?
> A: No, I was looking down. I wanted to see if there was a gun cause he said there was.
> Q: When you were looking down -- pardon me; what were you looking at? His hands?
> A: I was just looking down. It was dark so I didn't see anything.
> Q: Okay. You're certain once he said he had a gun you took it upon yourself to find out if that was true?
> A: That's right.
> Q: Obviously --

7

A:     Yes.

Q:     -- you concluded that he didn't have a gun?

A:     Yes.

Joint App'x at 176-77. The Diazes also testified that they never saw Lynch possess or use a weapon during the robbery.

Lynch did not present a defense,[1] but Brandon testified on his own behalf. He said that he had never met Lynch and did not participate in the robbery. Instead, Brandon testified that on the day of his arrest, he had been walking through a field when a man approached him and offered to sell him a gun for $20. Brandon obliged, testifying that he had bought the gun for "no purpose." Id. at 200. He was then walking down the street when the police accosted him, searched him, found the gun he had just bought, and placed him under arrest.

Later, at the charge conference, counsel for both defendants asked the trial court to instruct the jury that, to convict under Penal Law § 160.15(3), the count involving the use or threatened use of a dangerous instrument, the jury had to find that the defendant possessed a dangerous instrument at the time of the

---

[1] Lynch's counsel sought to introduce a recording of a telephone call from Tally-Verstraten to 911, but the court denied the request. See Lynch v. Superintendent Dolce, No. 12-cv-974 (W.D.N.Y. Feb. 26, 2013), ECF No. 11-3, at 282.

robbery. For authority, counsel cited the decision of the New York Court of

Appeals in People v. Pena, 50 N.Y.2d 400 (1980).[2] In an oral decision, the trial

court acknowledged that case, but declined to give the possession instruction.

Lynch's counsel then asked the court again:

> I requested you as to count two to include in your charge
> an essential element of the commission of that offense,
> that's the charge that alleges the use or the threatened use
> of a dangerous instrument, I'd ask that you charge the
> additional element that the robber/defendant in fact
> possessed a dangerous instrument.

Joint App'x at 209. The trial court again denied the request.

The court subsequently instructed the jury that to convict of first-degree

robbery under Penal Law § 160.15(3), the jury had to find only two elements:

first, that the defendant forcibly stole property; and second, that "during the

commission of [the] crime or an immediate flight therefrom, the defendant or

another participant in the crime used or threatened the immediate use of a

---

[2] As relevant here, the Court of Appeals stated in that case, "[d]ecisional law tells us that, though the statutory ground upon which the first degree robbery count was brought is not explicit in that regard, the jury was required to find that [the defendant] actually possessed a dangerous instrument at the time of the crime." Pena, 50 N.Y.2d at 407 (citation omitted). This statement was arguably dictum, however, as the case did not involve an allegation of instructional error.

dangerous[ ] weapon; to wit, a handgun." Id. at 215.

The jury convicted Lynch of robbery in the first degree, involving the use or threatened use of a dangerous instrument. It acquitted him, however, of robbery in the first degree while armed with a deadly weapon, convicting him instead of the lesser included offense of third-degree simple robbery. It also convicted him of the two counts of robbery in the second degree (aided by another person and causing physical injury to a non-participant). The jury acquitted Brandon of all counts related to the robbery, but convicted him of criminal possession of a weapon. The trial court sentenced Lynch to a 12-year term of imprisonment for the first-degree robbery count, 10-year terms for the second-degree counts, and a 7-year term for the third-degree count, the sentences to run concurrently.

III.    The Direct Appeal

Lynch was represented by new counsel on appeal. For reasons that are not clear from the record, appellate counsel did not file her opening brief until August 2010, nearly five years after the sentencing. In the intervening years, the New York Court of Appeals decided People v. Ford, 11 N.Y.3d 875 (2008), which held, relying on Pena, that the trial court in that case had erred in failing to

10

inform the jury that "actual possession" was an essential, though implicit, element of dangerous-instrument robbery, instead merely "parrot[ing] the statute," as the trial court did here. Id. at 878. Following Ford, New York amended its pattern jury instructions for first-degree robbery under Penal Law § 160.15(3) to include language stating that the People must prove that the defendant "possessed a dangerous instrument." See People v. Grant, 17 N.Y.3d 613, 619 n.3 (2011), quoting CJI2d(NY) Penal Law § 160.15(3) (revised Jan. 5, 2009).

Lynch's counsel did not raise any claim of instructional error in his direct appeal, however. Instead, the appellate brief raised six issues, arguing that (1) Lynch was never actually convicted of robbery in the first degree because the trial transcript reflected that the court clerk asked the jury if it found Lynch guilty only of *third*-degree robbery; (2) the evidence was insufficient to support a conviction for first-degree robbery;[3] (3) the evidence presented to the grand jury and petit jury was insufficient to support the convictions for second-degree robbery; (4) the convictions were against the weight of the evidence; (5) the court

---

[3] The first two issues were raised in the appellate brief as sub-arguments under one heading. See Joint App'x at 37-42.

11

erred in excluding a 911 call that the defense sought to admit; and (6) the sentence was excessively harsh.

The New York Supreme Court Appellate Division, Fourth Department, affirmed Lynch's conviction and sentence on February 10, 2011. People v. Lynch, 916 N.Y.S.2d 407 (4th Dep't 2011) ("Lynch I"). With regard to the court clerk's error in asking the jury whether they found Lynch guilty of third-degree robbery, the court held that the claim was unpreserved, and, in any event, the verdict sheet and the trial court's charge made it clear that the jury had in fact convicted Lynch of first-degree robbery. See id. at 408. Regarding the sufficiency and weight of the evidence arguments, the court held, "Contrary to defendant's further contention, the evidence is legally sufficient to support the conviction. Viewing the evidence in light of the elements of the crimes as charged to the jury, we conclude that the verdict is not against the weight of the evidence." Id. at 409 (citations omitted). The Appellate Division found Lynch's additional arguments to be without merit. Leave to appeal to the Court of Appeals was denied. People v. Lynch, 17 N.Y.3d 807 (2011).

IV.  Postconviction Proceedings

Lynch timely filed a *pro se* petition for a writ of error *coram nobis* in the state

court, arguing, *inter alia*, that his appellate counsel had rendered ineffective assistance by failing to raise the instructional error in his direct appeal. The Appellate Division summarily denied the petition, stating only that, having considered Lynch's petition and supporting affidavit and the affirmation of the Assistant District Attorney, "It is hereby ORDERED that the motion is denied." Joint App'x at 86; People v. Lynch, 948 N.Y.S.2d 841 (4th Dep't 2012). Leave to appeal to the Court of Appeals was again denied. People v. Lynch, 19 N.Y.3d 1027 (2012).

Lynch then filed a federal petition for a writ of habeas corpus, asserting the ineffective assistance of appellate counsel claim, as well as several other issues. The district court denied the petition. Lynch v. Superintendent Dolce, No. 1:12-CV-0974 (MAT), 2014 WL 1600379 (W.D.N.Y. Apr. 21, 2014) ("Lynch II"). As to the ineffective assistance of appellate counsel claim, the district court was "not prepared to say . . . that appellate counsel was outside the wide range of professionally competent assistance in failing to press [the instructional error argument] on appeal." Id. at *12 (internal quotation marks omitted). The district court noted that respondent argued that the claim of instructional error was unpreserved, and stated that "[c]ourts in this Circuit have consistently held that

appellate counsel should not be faulted for failing to raise an unpreserved claim." Id. The district court went on, however, to "question[ ] the conclusion of the assistant district attorney . . . that the 'actual possession' claim was unpreserved," id., noting that counsel had requested the charge, was rebuffed by the trial court, and after the trial court gave its charge to the jury, the court asked whether there were "any requests or exceptions to the charge *other than those previously made* a part of the record." Id. (emphasis added) (alteration and internal quotation marks omitted). Thus, the district court stated, "Arguably . . . at least the judge and the trial attorneys understood the 'actual possession' claim to be preserved." Id.

The district court did not finally rule on the adequacy of counsel's performance, however. Instead, it held that Lynch failed to demonstrate prejudice, "because, as the Appellate Division found on appeal, the evidence was legally sufficient for the jury to find that Petitioner 'actually possessed' the handgun found later on [his] co-defendant's person." Id. The district court noted that while a robber's mere assertion that he had a weapon is not enough to convict of first-degree robbery under New York law, here there was more: Tally-Verstraten felt her assailant press "an object" into her back as he announced it

14

was a gun, and, immediately after the robbery, Lynch got into the car with Brandon, who was later found with a gun.[4] Id. at *13. Based on this evidence, the district court held that there was sufficient circumstantial evidence for a rational juror to conclude that Lynch had a gun in his possession at the time of the robbery, and that he used that gun to threaten Tally-Verstraten and forcibly steal her purse. Id. Therefore, the district court concluded that the outcome of Lynch's direct appeal would not have been different, even if appellate counsel had raised the instructional issue. Id.

We granted a certificate of appealability solely on the issue of ineffective assistance of appellate counsel. Lynch v. Superintendent Dolce, No. 14-1675 (2d Cir. Aug. 29, 2014), ECF No. 27.

## DISCUSSION

I.    Standard of Review

We review a district court's denial of a petition for a writ of habeas corpus de novo and the underlying state court's denial for "an objectively unreasonable

_____

[4] The district court appears to have assumed that the driver of the car was Brandon, and a reasonable jury could certainly have so found. The actual jury, however, may have had a reasonable doubt about that, as it acquitted Brandon of involvement in the robbery.

15

application of clearly established federal law," as determined by the Supreme Court. Rivas v. Fischer, 780 F.3d 529, 546 (2d Cir. 2015) (internal quotation marks omitted); see 28 U.S.C. § 2254(d)(1). Where, as here, the state court does not provide reasons for its dismissal of a petitioner's claim, we consider "what arguments or theories . . . could have supported[] the state court's decision," and may grant habeas only if "fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Harrington v. Richter, 562 U.S. 86, 102 (2011).

The Sixth Amendment guarantees the right to effective representation on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). In assessing a claim that a lawyer's representation did not meet the constitutional minimum, we "indulge a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). To overcome that presumption, a petitioner must establish both parts of the familiar Strickland test, showing, first, that his attorney's performance "fell below an objective standard of reasonableness," id. at 688, and, second, that there was prejudice, meaning a "reasonable probability" that, but for counsel's error, the outcome would have been different, id. at 694. This test applies in the

16

appellate context as well as at trial.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000).  In that context, counsel has no duty to raise every non-frivolous issue that could be raised.  See Jones v. Barnes, 463 U.S. 745, 754 (1983).  Nevertheless, appellate counsel's performance must meet prevailing professional norms.  See Smith v. Murray, 477 U.S. 527, 535-36 (1986), citing Strickland, 466 U.S. 668.  We have held that "a petitioner may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  "The claim whose omission forms the basis of an ineffective assistance claim may be either a federal-law or a state-law claim, so long as the 'failure to raise the state claim fell outside the wide range of professionally competent assistance.'"  Id. (alteration omitted), quoting Claudio v. Scully, 982 F.2d 798, 805 (2d Cir. 1992).

To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court.  See Claudio, 982 F.2d at 805.  Whereas counsel's performance is evaluated based "on the facts of the

17

particular case, viewed as of the time of counsel's conduct," Strickland, 466 U.S. at 690, the prejudice determination "may be made with the benefit of hindsight." Mayo, 13 F.3d at 534, citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

II.     The Standard Applied

At the outset, we pause to note what is at stake in this appeal. This appeal has no effect on Lynch's well deserved and fairly obtained convictions for the serious crimes of second- and third-degree robbery, or the sentences imposed on those counts. The evidence showed that Lynch forcibly stole from a young mother, threatening violence against her and her children and physically assaulting her in the process, and made his getaway with the aid of another person. That evidence overwhelmingly supports his convictions for second- and third-degree robbery, for which he must serve a 10-year prison term. All legal challenges to those convictions and that sentence have been rejected.

Lynch was further sentenced, however, to two additional years in prison, based on a conviction for *first*-degree robbery. New York has seen fit to divide the crime of robbery into degrees, reserving the highest degree – carrying the highest penalties – for a select group of the most serious cases of forcible stealing. These cases are marked by specified aggravating circumstances. Lynch was

18

convicted of this most serious category of robbery based on the aggravating factor of using or threatening the immediate use of a dangerous instrument. N.Y. Penal Law § 160.15(3). Notably, the jury *acquitted* him of a parallel charge of first-degree robbery based on his being actually *armed* with a deadly weapon. Id. § 160.15(2). The only dangerous instrument or deadly weapon of which there was any evidence was the gun that Lynch claimed to have when threatening his victim, which the prosecution argued was recovered from Brandon at his arrest.

On the face of the statute on which Lynch was convicted, there is an apparent ambiguity: Can a defendant be guilty for threatening a victim with the use of a dangerous weapon when the threat is, in effect, an empty one, because the defendant did not actually possess any weapon? Lynch's counsel asked the trial judge to advise the jury that such an empty (though obviously frightening and malicious) threat would *not* aggravate the crime to first-degree robbery. Trial counsel was astute to raise this issue. If the jury was not told that actual possession of a weapon was required, Lynch was very likely to be convicted of first-degree robbery: the victim's testimony, which the jury had every reason to believe, was unequivocal that Lynch had threatened to shoot her. But if an empty threat would not suffice, and possession of an actual weapon was

19

required, as discussed more fully below, the defense would have a good chance to avoid conviction on the most serious, aggravated charge.

In short, the legal issue that Lynch's trial lawyer attempted to raise, and that forms the underlying issue Lynch continues to press, could not result in overturning his conviction and 10-year sentence for second- and third-degree robbery, but does affect whether he was also guilty of first-degree robbery.

With these issues in mind, and with full respect for the state's primary role in reviewing its own convictions, we conclude, based upon a full review of the law and the record of this case, that the district court erred in determining that the state court's decision denying Lynch's claim of ineffective assistance of appellate counsel was not an unreasonable application of clearly established federal law.

A.     Appellate Counsel's Performance

As explained above, an appellate lawyer's performance falls below professional standards when she fails to raise a significant, obvious issue, "while pursuing issues that [are] clearly and significantly weaker."  Mayo, 13 F.3d at 533.  The jury instruction issue presented by trial counsel was precisely such a

significant and apparent issue that a competent appellate attorney should have pursued.

First, there is no question that the issue had merit, because the trial court's failure to give the requested instruction was unquestionably error under New York law. The principle that actual possession of a dangerous instrument is a necessary element of first-degree robbery by the threatened use of such an instrument had been established in New York for a generation by the time of Lynch's trial. In People v. Pena, decided in 1980, New York's highest court stated, "[d]ecisional law tells us that, though the statutory ground upon which the first degree robbery count was brought is not explicit in that regard, the jury was required to find that [the defendant] actually possessed a dangerous instrument at the time of the crime." 50 N.Y.2d at 407 (citations omitted). Although that statement may have been dictum, following Pena, the Fourth Department twice held that an empty verbal threat to use a dangerous weapon was legally insufficient for a conviction for robbery in the first degree and under analogously-worded statutes, because "[a]ctual possession of a dangerous instrument is required for robbery in the first degree." People v. White, 548 N.Y.S.2d 119, 120 (4th Dep't 1989); People v. Stefano, 522 N.Y.S.2d 391, 392 (4th

21

Dep't 1987). Each of the other departments of the Appellate Division had similarly so held by the time of Lynch's trial. See Grant, 17 N.Y.3d at 618 (collecting cases). Thus, it was clearly error for the trial court to refuse to instruct the jury that possession was an element of first-degree robbery under Penal Law § 160.15(3).[5]

To the extent there was any doubt as to that requirement, it was dispelled after Lynch's conviction, but before his appellate counsel's filing of the direct appeal brief, when the Court of Appeals decided People v. Ford, 11 N.Y.3d 875 (2008). That case reaffirmed the previously-quoted language in Pena and held that a jury instruction that fails to "use the term 'actual possession,' or in any other way convey that requirement to the jury" constitutes reversible error. Id. at 878. Following Ford, but still before counsel filed the appellate brief in this case,

---

[5] Moreover, the issue was fully preserved for appellate review. Respondent no longer presses the argument that it was not. Lynch's trial counsel unambiguously requested an instruction that the jury must find that "the robber/defendant in fact possessed a dangerous instrument" in order to find Lynch guilty of robbery in the first degree under New York Penal Law § 160.15(3). Joint App'x at 209. After the trial court refused to give such an instruction, and subsequently delivered its jury charge without any reference to possession, the court asked counsel whether there were "any requests or exceptions to the charge *other than those previously made a part of the record*." Id. at 216 (emphasis added). There was thus no need for Lynch's trial counsel to reiterate his request as an exception to the charge.

22

the New York pattern jury instructions were amended to reflect that possession was an element of robbery in the first degree with the use or threatened use of a dangerous instrument. See Grant, 17 N.Y.3d at 619 n.3, citing CJI2d(NY) Penal Law § 160.15(3) (revised Jan. 5, 2009). Consequently, although the charge given by the trial court in 2005 was based on the then-current pattern jury instruction, the Ford decision in 2008 rendered beyond debate the conclusion that the trial court erred in refusing to instruct on the possession element by the time the appellate brief was filed in 2010.[6]

The issue was thus plainly a "significant" one for appeal. Criminal defense lawyers are not often able to argue on appeal that the trial court refused a specific request for a jury instruction that, at the time the appeal is heard, the state's highest court had recently held (based on long-standing precedent) *must* be given. Moreover, the issue was patently obvious on the face of the record. Trial

---

[6] Furthermore, five months prior to counsel filing the appellate brief, another department of the Appellate Division, relying on Ford, reversed a conviction under Penal Law § 160.15(3) as a result of the trial court's failure to give a possession instruction. See People v. Cordes, 897 N.Y.S.2d 479, 481 (2d Dep't 2010), citing Ford, 11 N.Y.3d at 878.

counsel had diligently made the charge request, citing the controlling precedent.[7]

A simple Shepard-search of that precedent would have revealed the recent Court

of Appeals case applying the precedent in a highly analogous context, the newly-

revised pattern jury instructions including the omitted element, and the

multitude of Appellate Division cases holding that proof of actual possession was

required for a first-degree robbery conviction. Had appellate counsel conducted

that search, she would have recognized the error in the jury instruction and that

it was a promising ground for success on appeal. The error, it is true, did not

affect most of the counts of conviction. But, as discussed more fully below,

Lynch did not have any promising issues that could lead to his full exoneration,

or even to a new trial on all counts. An issue that could result in reversal of the

first-degree conviction would undo the most serious count of conviction, on

which Lynch had received the longest sentence. Further, the omission cannot be

explained as a strategic decision to eschew arguments that attacked only the first-

degree conviction; the first two arguments raised in Lynch's appellate brief

---

[7] Appellate counsel in fact cited <u>Pena</u> in the appellate brief, but did so only in the context of the sufficiency of the evidence argument, and did not indicate that there was any request to instruct the jury based on that case. <u>See</u> Joint App'x at 40-41.

addressed only that conviction. Cf. Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Respondent argues that appellate counsel's performance was not deficient, because counsel's argument that the evidence presented at trial was legally insufficient to convict Lynch of first-degree robbery and her argument that the conviction was against the weight of the evidence were "essentially the same" as the instructional issue. Resp't's Br. 42. Furthermore, the argument goes, attacking the sufficiency of the evidence to support a first-degree robbery conviction offered the possibility of greater relief, since a finding of insufficient evidence would result in outright acquittal, rather than just a new trial.

But counsel's decision to challenge the sufficiency and weight of the evidence in relation to the possession requirement does not support any reasonable strategic basis for failing to raise the instructional error as a distinct, alternative argument for relief. Counsel did not face a choice between the two arguments; they could have been presented as alternative grounds for reversal of the first-degree robbery conviction. Moreover, counsel who was aware of the Ford decision would have recognized that raising the sufficiency claim *without*

pointing to the error in the jury instruction significantly weakened the sufficiency argument. While the Court of Appeals held in <u>Ford</u> that failure to instruct on possession was error, because there was no objection to the erroneous charge in that case, the court analyzed the sufficiency of the evidence "in light of the [trial] court's charge as given without exception." 11 N.Y.3d at 878. Thus, counsel's failure in this case to apprise the appellate court that trial counsel had requested the correct charge had the additional deleterious effect of framing the analysis of Lynch's other claims through the lens of the charge *as given*. And without the actual possession instruction, the evidence was clearly sufficient to support a finding beyond a reasonable doubt that Lynch was guilty of first-degree robbery based solely on his threat to shoot the victim.

Respondent contended at oral argument that the Appellate Division would not have analyzed the sufficiency of the evidence here as the Court of Appeals did in <u>Ford</u>, because here, trial counsel *did* request the possession charge. But even assuming that the court would have analyzed the sufficiency of the evidence in the context of the correct charge, rather than the charge as given,[8] the

_____

[8] That assumption is dubious. First, it requires us to suppose that the Appellate Division scoured the record for objections by trial counsel that were not raised on appeal. Even indulging in that supposition, the Appellate Division

sufficiency issue was inherently weaker than the instructional issue, both because of the different standard applied to each kind of claim and because of the merits of the specific claims in this case.

The sufficiency issue is analyzed on a standard of whether, viewing the evidence in the light most favorable to the prosecution, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. See People v. Taylor, 94 N.Y.2d 910, 911 (2000). Whether an erroneous jury instruction is harmless, by contrast, is analyzed for whether "in light of the totality of the evidence, there is no reasonable possibility that the [instructional] error affected the jury's verdict." People v. Douglas, 4 N.Y.3d 777, 779 (2005). The latter is plainly a far more favorable standard for an appellant.

Further, the evidence that Lynch possessed a dangerous instrument, while less than overwhelming, was (as the Appellate Division ultimately concluded) sufficient for a rational, properly instructed jury to convict him of first-degree robbery: Lynch said he had a gun, Tally-Verstraten felt "something" being shoved against her, and the Diazes identified Brandon, who had a gun, as the

---

here actually stated – at least with regard to the weight issue – that it was "[v]iewing the evidence in light of the elements of the crimes *as charged to the jury*." Lynch I, 916 N.Y.S.2d at 409 (emphasis added).

27

person who was with Lynch at the gas station, and who, a reasonable jury could infer, was with Lynch during the robbery. The instructional issue, by contrast, was a clear winner. For the reasons discussed above, the legal error in the instruction was plain, and the issue had been properly preserved. Moreover, while the evidence may have been sufficient to allow a jury to convict under the correct instruction, Lynch had a strong argument that a properly-instructed jury might well have had a reasonable doubt about whether he did have a gun: as discussed more fully below, none of the witnesses saw a gun during the robbery, Tally-Verstraten did not believe Lynch actually had one, the evidence about the struggle suggested it was unlikely that Lynch was holding a gun while snatching Tally-Vertraten's purse with one hand and punching her with the other, and Brandon denied having been present at the robbery or having possessed a gun in any relation to Lynch. Nor are these arguments purely hypothetical: the jury *acquitted* Lynch of the first-degree charge that they were properly told *did* require Lynch to be "armed" with a weapon, and the jury acquitted Brandon of participating in the robbery. The sufficiency argument that appellate counsel raised was accordingly "clearly and significantly weaker" than the "significant and obvious issue[ ]" of the instructional error. Mayo, 13 F.3d at 533.

28

Respondent argues, however, that the omission of the instructional issue from the appellate brief was strategic in any event, because counsel could have made a reasonable strategic choice to raise only issues whose success on appeal would result in dismissal of the indictment, rather than a new trial in which Lynch could in theory have been exposed to a harsher sentence if re-convicted. Counsel manifestly did not follow such a strategy, however, since she raised an evidentiary issue (regarding exclusion of the 911 call), which, if successful, would have entitled Lynch only to a new trial. Forgoing the instructional issue therefore could not have been a strategic choice to protect Lynch from the prospect of a new trial and a higher sentence.[9] Counsel's failure to raise the instructional issue, while pursuing other issues that were significantly weaker and had no strategic benefit, fell below prevailing professional norms for an appellate attorney.

---

[9] Obviously, counsel's arguments regarding the convictions for second-degree robbery and the sentencing similarly offered no tactical advantage, as neither attacked the conviction on the top count. Absent a trial error requiring a new trial on all counts, Lynch could only avoid conviction and prison by identifying errors affecting *each* count of conviction. Obtaining reversal of the lesser convictions carrying lesser concurrent sentences would have little benefit to Lynch if the 12-year sentence for first-degree robbery remained in place.

B.     Prejudice

The heart of the district court's decision, however, and of the parties' dispute, is Strickland's prejudice prong.  In order to find prejudice, we must determine whether there is a reasonable probability that the outcome of the appeal would have been different; in other words, whether the Appellate Division likely would have concluded that the trial court's failure to give the possession instruction was error, and that the error was not harmless beyond a reasonable doubt.  See People v. Clyde, 18 N.Y.3d 145, 153 (2011) (noting that, for errors of constitutional dimension, New York courts "apply [United States] Supreme Court precedent in deciding whether the error is of a type that may be harmless," citing Chapman v. California, 386 U.S. 18 (1967)).  We have already concluded that the instruction was error.  Consequently, the critical question in this case is whether "in light of the totality of the evidence, there is no reasonable possibility that the [instructional] error affected the jury's verdict."  Douglas, 4 N.Y.3d at 779.[10]     The district court determined that Lynch was not prejudiced

---

[10] Respondent argues that we should apply New York's harmlessness standard for *non*-constitutional error, namely, that an "error is harmless only when there is overwhelming proof of the defendant's guilt and no significant probability that the jury would have acquitted the defendant were it not for the error."  People v. Robinson, 17 N.Y.3d 868, 870 (2011) (internal quotation marks

30

by appellate counsel's failure to raise the instructional issue, because "the evidence was legally sufficient for the jury to find that Lynch 'actually possessed' the handgun found later on [his] co-defendant's person." Lynch II, 2014 WL 1600379, at *12. That was the wrong standard. The question is not whether the evidence was sufficient to permit a conviction under the proper instructions – as noted above, it was – but, rather, whether there is no reasonable possibility that the failure to instruct on the possession requirement affected the jury's verdict. Analyzing that question in light of the evidence presented at trial and the jury's verdicts on the various counts leads inexorably to the conclusion that the error was harmful.

First, the evidence that Lynch himself possessed a gun during the robbery was minimal. Neither the victim nor the third-party witnesses saw a gun in Lynch's possession during the robbery. Tally-Verstraten testified that she felt

---

omitted). We disagree, because failure to instruct on an element of the offense is error of a constitutional dimension. See United States v. Tureseo, 566 F.3d 77, 86 (2d Cir. 2009). But even under the less exacting non-constitutional error standard, the evidence here is not so overwhelming that, had counsel raised the issue, there is no reasonable probability that the outcome of the appeal would have been different.

31

Lynch "shove[] something" in her waist, which "[c]ould . . . have been his fist,"[11] and that she looked down to see whether he had a gun and concluded that he did not. Joint App'x at 176-77. That conclusion was supported by the evidence that, while Lynch was struggling with the victim over her purse with one hand, he punched her with his other hand. Finally, in addition to Tally-Verstraten's testimony that she did not believe Lynch had a gun, a reasonable jury could infer from her courageous behavior – asking her assailant if he was kidding, pushing him away, and refusing to let go of her purse – coupled with Lynch's failure to use or brandish a firearm in response, that Lynch did not possess a gun during the robbery.

Moreover, the jury acquitted Lynch of the offense of first-degree robbery while armed with a deadly weapon. N.Y. Penal Law § 160.15(2). To be sure, the jury's decision to acquit Lynch of deadly-weapon robbery, while convicting him of dangerous-instrument robbery, could be explained, as respondent urges, by the fact that under New York law, a gun must be loaded to qualify as a deadly weapon, whereas an unloaded gun could be a dangerous instrument if used as a

---

[11] The testimony was not, as the district court stated, that Tally-Verstraten felt "an object" pressed against her. Lynch II, 2014 WL 1600379, at *13.

32

bludgeon. See Resp't's Br. 29-31. But that argument merely shows that the evidence could have been *sufficient* to support the conviction. It remains possible – indeed, it seems probable – that the jury distinguished between the trial court's instructions on the two counts because to be "*armed* with a deadly weapon," Joint App'x at 213 (emphasis added), on its face implies possession in its ordinary meaning, while to "threaten[ ] the immediate use" of a dangerous instrument, id. at 215, without the added instruction requiring possession, suggests that mere threatening words are enough to convict.

Respondent argues, as the prosecutor did in summation, that the jury still could have found possession based on the gun found on Lynch's co-defendant, Rodney Brandon, during his arrest. We assume without deciding that an accomplice's possession of a dangerous instrument at or near the scene of the robbery would meet the requirement of a defendant's possession. The evidence, taken in the light most favorable to the prosecution, was sufficient to permit a reasonable jury to conclude that Brandon was the getaway driver, and that the gun that was in his possession when he was arrested was in his possession in the Family Dollar parking lot while Lynch was threatening his victim. But Brandon testified, offering an alternative account of his activities, and claiming that he had

not been at the scene and had never even met Lynch.  While that explanation

does not, on a cold record, sound very compelling, the fact is that the jury

acquitted Brandon of any role in the robbery.  It is possible that the jury acquitted

Brandon for some other reason than a finding that he was not present at the

robbery, such as a lack of intent to rob, but either way, it did not find that he was

an accomplice.[12]   In light of that verdict, it can hardly be said that the

instructional error was harmless beyond a reasonable doubt.  Lynch could only

threaten the immediate use of a gun in Brandon's possession if the two were

acting in concert; Brandon's acquittal indicates that the jury was not convinced

beyond a reasonable doubt that they were.  Therefore, respondent's contention

that the jury could have found possession of a dangerous instrument by Lynch

based on the gun later recovered from Brandon does not square with the jury's

_____

[12] Respondent insisted at oral argument that the jury *must* have found that Brandon was present at the robbery because it convicted Lynch of robbery in the second degree, aided by another person.  See N.Y. Penal Law § 160.10(1).  But the evidence permitted the jury to find that Lynch was aided by another person, namely, the getaway driver, and that Brandon was not that person.  In that case, the fact that Brandon was later found with a gun provides *no* evidence that a gun was actually present when Lynch committed the robbery.

34

verdict as to Brandon.[13]

At best, the evidence at trial was sufficient to convict Lynch of first-degree robbery under New York Penal Law § 160.15(3), but it was not so overwhelming that there is no reasonable possibility that the failure to charge the jury on the possession requirement affected its verdict on that count. The prejudice inquiry in this case is not whether sufficient evidence existed to convict Lynch based on his or Brandon's possession of a weapon. The question is whether the Appellate Division would likely have concluded that it could be certain, beyond a reasonable doubt, that a properly instructed jury would have seen it that way.

---

[13] Respondent also argues that even if Lynch did not actually possess a dangerous instrument, he could still be convicted on a theory of constructive possession. It is not clear that this is so. While "possession" under New York law generally includes constructive possession, N.Y. Penal Law § 10.00(8), the Court of Appeals in Ford refers to "*actual* possession," 11 N.Y.3d at 878 (emphasis added) (internal quotation marks omitted), a term usually used in opposition to constructive possession, see, e.g., People v. Parazino, 366 N.Y.S.2d 440, 442 (1st Dep't 1975) ("[T]he case is one of actual, as opposed to constructive possession . . . ."). Respondent noted at oral argument that the New York pattern jury instruction for first-degree robbery requires that the jury find only "possession," and the Court of Appeals cited this instruction approvingly in Grant, 17 N.Y.3d at 619 n.3. We need not decide whether constructive possession can suffice for a conviction under New York Penal Law § 160.15(3), because even assuming that it does, the jury could only find constructive possession by Lynch of a gun actually possessed by Brandon if it found that the two were accomplices in the robbery. It did not so find.

The actual jury, however, apparently did not see it that way, because it acquitted Lynch of being armed with a deadly weapon and acquitted Brandon of any involvement in the robbery. Based on the evidence presented at trial, and on the jury's verdicts, it is therefore clear that the trial court's error was not harmless beyond a reasonable doubt. Consequently, had counsel raised the instructional error on appeal, there is a reasonable probability that the Appellate Division would have reversed Lynch's conviction for first-degree robbery.

It is not enough, however, for us to conclude that, in our view, appellate counsel provided ineffective assistance. Our review function in habeas cases is limited; we may only grant the writ if the state courts' denial of a petitioner's claim was an unreasonable application of clearly established federal law, as determined by the holdings of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). That standard is easily met here. The right to effective assistance of counsel on an appeal as of right is firmly established by Supreme Court precedent. See Evitts, 469 U.S. at 396-97; Anders v. California, 386 U.S. 738, 744 (1967). An appellate lawyer need not raise every plausible claim and has a wide degree of professional discretion to choose which issues to raise. See Jones, 463 U.S. at 754. But, to meet the

36

constitutional minimum of effective assistance, counsel's performance, judged on the facts of the particular case and viewed as of the time of counsel's conduct, must be within the range – wide though it is – of professional competence.  Cf. Smith v. Murray, 477 U.S. at 535 (concluding that counsel's decision not to press claim on appeal was not "an error of such magnitude that it rendered counsel's performance constitutionally deficient under the test of Strickland v. Washington").

The Appellate Division denied Lynch's *coram nobis* petition without opinion.  In that circumstance, we must still defer to its decision, and deny relief if there is any reasonable basis on which it can be found consistent with the governing precedent.  See Richter, 562 U.S. at 102.  We have applied that standard here.  As discussed above, we have considered every argument that respondent has offered and that we could ourselves hypothesize.  Having considered these arguments, we find no basis on which to conclude that a court could reasonably determine that failing to raise a clearly meritorious claim of jury instruction error that would likely lead to reversal of the most serious count of conviction – accounting for a significant increase in the defendant's sentence – while raising other, weaker arguments, can be considered a strategic choice

within the wide range of decisions that constitute professionally competent assistance. Nor can we conclude, given the minimal evidence of possession in this case and the jury's verdicts foreclosing nearly all possible alternative explanations, that fairminded jurists could disagree as to whether there is a reasonable probability that, had counsel raised the instructional issue, the outcome of the appeal would have been different. See id. at 101. The Appellate Division's denial of Lynch's *coram nobis* petition was therefore objectively unreasonable, and the district court accordingly erred in denying his petition for a writ of habeas corpus.

III.    Relief

A final word as to appropriate relief. A federal habeas court is authorized by Congressional statute to "dispose of the matter as law and justice require." 28 U.S.C. § 2243; see Hilton v. Braunskill, 481 U.S. 770, 775 (1987); Simmons v. Reynolds, 898 F.2d 865, 869 (2d Cir. 1990). In so doing, we are mindful of the Supreme Court's admonition that "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Lafler v. Cooper, 132 S. Ct. 1376, 1388 (2012) (internal quotation marks omitted). "Thus, a remedy must neutralize

38

the taint of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." Id. at 1388-89 (internal quotation marks and citation omitted).

In general, the appropriate remedy for ineffective assistance of appellate counsel is to grant a new appeal. See, e.g., Claudio, 982 F.2d at 806; but see Ramchair v. Conway, 601 F.3d 66, 78 (2d Cir. 2010). We do so here. However, because Lynch has already served a 10-year term of imprisonment, which, for the reasons discussed above, was properly imposed for his convictions for *second-* and *third*-degree robbery, he remains incarcerated solely on the flawed first-degree robbery conviction. Thus, if we simply ordered a new appeal without more, Lynch would remain imprisoned based on a conviction that the Appellate Division is likely to reverse, after an appeal that could easily consume much of the time remaining on his sentence for the first-degree robbery conviction. Accordingly, in light of the unusual circumstances of this case and the prolonged delay in Lynch's first direct appeal, we instruct the district court to order Lynch released pending his new appeal. See Matthis v. Hood, 937 F.2d 790, 796 (2d Cir. 1991).

39

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court, and REMAND the cause, with instructions to issue a writ of habeas corpus, unless, within one week of our mandate, the State (1) moves to vacate the prior judgment of the New York Supreme Court Appellate Division, Fourth Department, to the extent that judgment affirmed Lynch's conviction for first-degree robbery; (2) consents to the reinstatement of Lynch's direct appeal; (3) certifies that Lynch has been released from custody pending the determination of that appeal; and (4) consents that, absent a reason for confinement that does not depend on his conviction for first-degree robbery, Lynch shall remain at liberty pending further order by the Appellate Division.

The mandate shall issue forthwith.