*Waiters v. Lee*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of November, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> REENA RAGGI,
> > *Circuit Judge*,
> ERIC N. VITALIANO,
> > *District Judge*.*

_____

GENERAL WAITERS,

>                     *Petitioner-Appellant*,

>        v.                                                      20-2190

WILLIAM A. LEE, Superintendent of Greene Haven Correctional Facility,

>                     *Respondent-Appellee*.

_____

For Petitioner-Appellant:          MEGAN WOLFE BENETT (Gary A. Farrell, *on the brief*), Kreindler & Kreindler LLP, New York, NY.

---

* Judge Eric N. Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

For Respondent-Appellee:	RHEA A. GROB (Leonard Joblove and Jodi L. Mandel, *on the brief*), *for* ERIC GONZALEZ, District Attorney of Kings County, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brodie, *J.*; Bulsara, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 24, 2020 judgment of the district court is **AFFIRMED**.

Petitioner-Appellant General Waiters ("Waiters") appeals from the denial of his petition for a writ of habeas corpus, challenging his New York State convictions for, *inter alia*, second-degree murder. *See* N.Y. Penal Law § 125.25(1). We detailed the uncontested facts of Waiters's crime in a prior opinion. *See Waiters v. Lee* (*Waiters I*), 857 F.3d 466, 468–71 (2d Cir. 2017). In this appeal, Waiters presses ineffective assistance of counsel arguments that we instructed the district court to consider on remand in light of *Waiters I*. *See id.* at 484. Waiters argues that his trial counsel was ineffective in failing (1) to request a jury instruction on the lesser-included offense of second-degree manslaughter and (2) to impeach a witness with her prior and allegedly inconsistent statement. Waiters argues that these errors, individually or together with counsel's alleged failure to adduce expert testimony, warrant habeas relief.

Over Waiters's objections, the district court adopted Magistrate Judge Bulsara's recommendation to reject these claims, to deny the habeas petition, and to grant a certificate of appealability "on the issue of whether he was denied his constitutional right to the effective assistance of counsel." *Waiters v. Lee* (*Waiters II*), No. 13-CV-3636, 2020 WL 3432638, at *14 (E.D.N.Y. June 23, 2020). We assume the parties' familiarity with the underlying facts, the

2

procedural history of this case, and the issues on appeal, which we lay out here only as necessary to explain our decision to AFFIRM.[1]

* * *

We review the district court's denial of a petition for a writ of habeas corpus *de novo*. *Lynch v. Dolce*, 789 F.3d 303, 310–11 (2d Cir. 2015).[2] Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, we review a claim that was decided on the merits in a state court only for an "objectively unreasonable" application of clearly established federal law. *Rivas v. Fischer*, 780 F.3d 529, 546 (2d Cir. 2015); *see also* 28 U.S.C. § 2254(d). To succeed on a claim for ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Federal courts reviewing an ineffective assistance claim rejected by a state court on the merits "owe deference to both [the petitioner's] counsel *and* the state court." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). Under this "doubly deferential" standard of review, "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision," *id.* at 2410–11 (first quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013), then quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)), *and* if counsel's failure resulted in a "substantial" likelihood of a different result, *see Harrington*, 562 U.S. at 112.

---

[1] Notwithstanding our decision to affirm, Petitioner-Appellant's counsel, whom the district court appointed in 2013, *see Waiters I*, 857 F.3d at 474, have ably discharged their responsibilities throughout the complex and protracted proceedings in this case.

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

**A.  Failure to Request a Jury Instruction on Second-Degree Manslaughter**

Waiters has failed to show that his trial counsel's decision not to seek a second-degree manslaughter charge was an unreasonable tactical decision, much less that each and every fairminded jurist would so conclude.

As the district court observed and as Waiters conceded at oral argument in this court, he "has not identified a Supreme Court decision"—or a decision of any other court—"finding that the failure to request a lesser-included instruction constitutes deficient performance." *Waiters II*, 2020 WL 3432638, at *7. Thus, this part of his ineffective assistance claim fails for lack of support in clearly established law. *See Lynch*, 789 F.3d at 319 (holding that court may only grant habeas petition "if the state courts' denial of a petitioner's claim was an unreasonable application of clearly established federal law, as determined by the holdings of the United States Supreme Court").

Nevertheless, Waiters insists that because second-degree manslaughter, unlike the specific-intent charges on which he was convicted, requires only that the defendant acted recklessly, *see* N.Y. Penal Law § 125.15(1), his counsel should have sought the lesser charge.   Waiters argues that the jury might have concluded that he acted merely recklessly because he was intoxicated and that second-degree manslaughter was, thus, the only instruction consistent with the proffered intoxication defense.

But "whether or not to ask the trial judge to instruct the jury on lesser-included offenses is a matter of strategy and tactics." *Waiters II*, 2020 WL 3432638, at *9 (quoting *People v. Colville*, 20 N.Y.3d 20, 29 (2012)); *see also Cruz v. Superintendant*, No. 13-CV-2414, 2016 WL 2745848, at *9 (S.D.N.Y. May 11, 2016) (attorney's decision to "go for broke" and "not to request lesser-included offense instruction . . . that could dilute that strategy" did not constitute ineffective

4

assistance). Indeed, courts have specifically rejected ineffective assistance claims predicated on counsel's failure to request a second-degree manslaughter instruction in a murder prosecution under New York law. *Waiters v. Lee* (*R&R*), No. 13-CV-3636, 2018 WL 10811222, at *7 (E.D.N.Y. June 23, 2020) (citing *Ramdeo v. Phillips*, No. 04-CV-1157, 2007 WL 1989469, at *34 (E.D.N.Y. July 9, 2007) (holding decision not to request second-degree manslaughter charge was "strategic one," providing no basis for ineffective assistance claim); *Cassie v. Graham*, No. 06-CV-5536, 2007 WL 506754, at *25 (S.D.N.Y. Jan. 31, 2007) (deeming request for lesser-included offense fundamentally inconsistent with strategy denying guilt), *report and recommendation adopted*, 2009 WL 362134 (Feb. 10, 2009)).

Waiters's counsel's summation strongly suggests that he chose to pursue an "all or nothing" trial strategy in which a successful intoxication defense would defeat specific intent and yield a full acquittal. He argued:

> It's also not an issue of whether [Waiters] was reckless. Whether . . . being intoxicated made him reckless. Because I submit to you if you believe his actions, based on what you know about him, his interaction with the family was reckless, meaning he had no business having that gun, he had no business taking out that gun, but . . . alcohol . . . made him not think right and he was reckless, then you would have to find him not guilty of these intent crimes. He's not being charged with being reckless.

*Waiters II*, 2020 WL 3432638, at *10 (quoting trial transcript). Counsel could reasonably have made a strategic decision that this argument would have been undermined if the jury had been charged also on second-degree manslaughter.

Counsel's request for an instruction on first-degree manslaughter—a lesser-included, specific-intent offense, *see* N.Y. Penal Law § 125.20; *United States v. Scott*, 990 F.3d 94, 121 (2d Cir. 2021) (en banc)—warrants no different conclusion because that instruction was consistent

5

with a strategy of declining to submit crimes with a recklessness *mens rea* in the hope that the jury would acquit on all charges requiring specific intent.

Waiters notes that his counsel—testifying at an evidentiary hearing six years after trial—could not specifically recall why he decided not to request the second-degree manslaughter charge at trial. But as this court previously stated, "the fact that [counsel] no longer remembers his reason for this decision does not preclude a determination that Waiters failed to establish constitutionally defective representation." *Waiters I*, 857 F.3d at 478. In sum, because we cannot conclude that "*every* fairminded jurist would agree that *every* reasonable lawyer" would have chosen to pursue a compromise verdict by requesting the second-degree manslaughter instruction, *Dunn*, 141 S. Ct. at 2411, the district court correctly found no objectively unreasonable application of clearly established federal law in the state court's rejection of Waiters's claim that it was objectively unreasonable for his attorney to forego a second-degree manslaughter charge in this case.[3]

## B. Failure to Impeach

At trial, prosecution witness Jacqueline Warren testified that she did not know how many drinks Waiters consumed in a half-hour window during which he was with Warren and her aunt on the morning of the crime and could not say whether he had more than one drink during that period. Warren also testified that she began arguing with Waiters that morning after she took a bottle of liquor away from him because, in her view, Waiters "had drank too much." As to the supposedly prior inconsistent statement, Warren told a defense investigator in the weeks following

---

[3] Given this determination, we need not address whether Waiters was prejudiced by his counsel's strategy, nor whether Waiters would have been entitled to a second-degree manslaughter instruction if counsel had requested it.

the shootings that Waiters had consumed "about a pint" of liquor that morning by himself.[4] Waiters argues that any fair-minded jurist would conclude that his trial counsel was ineffective for failing to impeach Warren with this prior statement. We are not persuaded.

At the start, Warren's statements were arguably not inconsistent because they all acknowledge heavy drinking. "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). Here, counsel elicited from Warren that she took the liquor bottle away from Waiters because he already "had too much to drink." Warren also testified that "she and Waiters drank every day" and that "*sometimes* a fifth of rum managed to last them two days." *Waiters I*, 857 F.3d at 469 (emphasis added). As we explained in *Waiters I*, based on this and other evidence, "the jury was well aware that Waiters had been drinking . . . and that he was intoxicated when he emptied his revolver in the direction of Warren's family"—facts supporting the defense theory that he lacked the capacity for specific intent. *Id.* at 481. Contrary to Waiters's description, then, Warren's testimony did not seek to minimize the extent of his alcohol consumption on the morning of the crime, and we do not think that every reasonable lawyer would necessarily have sought to impeach Warren for purported inconsistency.

Indeed, had counsel attempted to do so, he would have been required to afford Warren "an opportunity to explain or deny" her purportedly inconsistent statement. Fed. R. Evid. 613(b); *Manley v. AmBase Corp.*, 337 F.3d 237, 248 (2d Cir. 2003). Warren might have done so in a

---

[4] In the same statement, Warren told the investigator that Waiters "is a drinker. He has a high tolerance for liquor, and a gallon of Hennessey is nothing for him to drink."

manner *undermining* the defense because she had also told the defense investigator before trial that "a gallon of Hennessey is nothing for [Waiters] to drink," a statement that could have harmed the defense case by demonstrating Waiters's heightened alcohol tolerance.

For these reasons, Waiters has not met his burden to show that "*every* fairminded jurist would agree that *every* reasonable lawyer" would have impeached Warren with her prior statement to the defense investigator.  *Dunn*, 141 S. Ct. at 2411.  Nor has he shown that, even assuming deficient performance with regard to such impeachment, a state court reasonably applying *Strickland* could not conclude that he was not prejudiced—that is, but for this supposed deficiency, there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Accordingly, the district court did not err in declining to grant habeas relief as to this claim.

**C. Cumulative Errors**

No different conclusion is warranted by considering the alleged errors cumulatively.  As Magistrate Judge Bulsara noted, "implicit in such a claim is, first, that the alleged individual errors a petitioner seeks to aggregate are actually *errors*."  *R&R*, 2018 WL 10811222, at *16 (quoting *Joyner v. Miller*, No. 01-CV-2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002)); *see also United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999) ("[T]he accumulation of non-errors does not warrant a new trial.").  As explained above, the state court did not unreasonably apply *Strickland* in rejecting Waiters's claim that his counsel was deficient, either as to the lesser-included offense instruction or as to Warren's impeachment.  Consequently, even if counsel's failure to call a medical expert amounted to deficient performance—an issue we found unnecessary

to reach in *Waiters I*—there are no errors here to aggregate with it. Waiters's final argument therefore constitutes no basis for habeas relief.[5]

\* \* \*

We have considered Waiters's remaining arguments and find them to be without merit. We therefore **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Given this summary disposition, we need not determine whether this claim, which is not specifically referenced in the certificate of appealability, is properly before us, nor assess its viability as a matter of clearly established federal law. *But see Hill v. Davis*, 781 F. App'x 277, 280–81 (5th Cir. 2019) (noting that "[t]he Supreme Court has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims").

9